María Isabel Colón y Otros, demandantes y recurrentes, *v.* Autoridad de las Fuentes Fluviales de Puerto Rico, Carl F. Hattler y Otros, demandada y recurrida la primera.

*Número:* R-82-54    *Resuelto:* 6 de mayo de 1982

*Plinio Pérez Marrero*, abogado de los recurrentes; *Carlos M. Díaz Lamoutte*, abogado de la recurrida Autoridad de Energía Eléctrica; los demás recurridos no comparecieron.

### SENTENCIA

Por vía de reconsideración y al amparo de la Regla 50 de nuestro Reglamento examinamos y resolvemos este recurso. Evaluados sus méritos, procede dejar sin efecto nuestra resolución denegatoria de 11 de marzo de 1982. En su lugar se expide el auto con efecto limitado bajo el cual se dicta sentencia que modifica la recurrida de 19 de enero de 1982 al sólo fin de conceder las costas a la parte demandante por disposición imperativa de la Regla 44.1(b) de Procedimiento Civil.

Aun cuando ciertamente la sentencia refleja unos errores matemáticos en la determinación de lucro cesante, hemos ponderado la compensación final y consideramos *razonable* la cuantía adjudicada. No habremos de intervenir en ese extremo, pues la doctrina prevaleciente, aplicable al caso de autos, reconoce que la fórmula sobre lucro cesante "no pretende exponer de manera absoluta *todos* los criterios matemáticos a tomarse en cuenta, sino aquellos comúnmente reconocidos. La *razonabilidad* de la cuantía total no puede hacerse depender de unos cómputos aritméticos, que en fin de cuentas se elaboran sobre unas bases y expectativas, que aunque precisables, no están inmunes de cierto grado de especulación. (Énfasis nuestro.) *Publio Díaz* v. *E.L.A.*, 106 D.P.R. 854, 871 (1978)". *Suro* v. *E.L.A.*, 111 D.P.R. 456, 460 (1981).

Tampoco alteraremos la aplicación y proporción de la negligencia comparada, con el mismo criterio justiciero con que nos negamos a darle curso a la solicitud de revisión promovida por la Autoridad (R-82-52).

Aunque humana e imperfecta, subsiste en la conciencia institucional e individual del Tribunal —como debe quedar también en la de los abogados de las partes— la paz espiritual del deber cumplido en la búsqueda del ideal de justicia.

Así modificada, la sentencia es confirmada.

Lo pronunció y manda el Tribunal y certifica la señora Secretaria General. El Juez Asociado Señor Irizarry Yunqué emitió opinión disidente a la cual se une el Juez Asociado Señor Negrón García.

(*Fdo.*) Lady Alfonso de Cumpiano

*Secretaria*

—O—

Opinión disidente emitida por el Juez Asociado Señor Irizarry Yunqué a la cual se une el Juez Asociado Señor Negrón García.

Nadie puede ni debe tener trato preferencial ante ningún tribunal de justicia. El derecho debe servir a la Justicia, y la Justicia debe impartirse por igual para todos.

Nuestro Derecho sobre daños emana de una disposición legislativa de tradición civilista —el Art. 1802 del Código Civil— que consigna la obligación del que causa un daño por culpa o negligencia de reparar el daño causado. No es esa una obligación de creación jurisprudencial y no pueden, por tanto, los tribunales alterarla.

En este caso, la negligencia de la Autoridad de Fuentes Fluviales, hoy Autoridad de Energía Eléctrica, al mantener una línea de más de cuatro mil voltios tendida a escasamente diez y seis pies de altura sobre el paso del Río Matilde en la jurisdicción de Salinas, cerca de su desembocadura en el mar, contribuyó, según conclusión del tribunal de instancia, a un trágico accidente en que perdió la vida un joven ingeniero civil de treinta años de edad.

Para mí es cuestionable que se responsabilizara a la Autoridad en solamente un cincuenta por ciento por la ocurrencia del accidente. Se trata de un río navegable a intervalos, según las altas y bajas de la marea, utilizado frecuentemente por pescadores y deportistas en botes de remo y de motor. Había en él pequeños muelles y en ellos se hacían reparaciones de embarcaciones pequeñas. Era previsible que a tan poca altura, que debía reducirse desde la borda de las embarcaciones en consideración a su elevación vertical sobre el nivel del agua, se pudiera producir un contacto accidental con la línea de alto voltaje. Eso fue precisamente lo que ocurrió mientras un velero en que viajaba el joven ingeniero era remolcado río arriba para ser reparado, en horas crepusculares de la tarde del 6 de noviembre de 1971.

Respeto, sin embargo, las determinaciones de hecho del tribunal de instancia, que vio y oyó declarar a los testigos, y que a base de ello concluyó que hubo concurrencia de culpas por el accidente. Si la línea de alta tensión era

visible a la hora del accidente, si la vio o no la persona que sujetaba el cable utilizado para remolcar el bote, si soltó el cable porque se percató de que el mástil iba a chocar con la línea, son todas consideraciones decididas a base de la apreciación que de la prueba hiciera el juez sentenciador. Él estaba en mejor posición que nosotros para apreciar la prueba. No podemos alterar sus determinaciones.

Respeto además la valoración de los daños morales por sufrimientos y angustias mentales de la joven viuda, estimados por el tribunal de instancia en $30,000 y reducidos a la mitad de esa suma a base de la determinación de concurrencia de culpas. Aunque considero que ningún dinero puede compensar el dolor que produce la muerte y la ausencia de un ser querido, creo que $30,000 por la pérdida del esposo, considerado el estado inflacionario de la economía en nuestro tiempo, es una cantidad inadecuada. Pero, como he dicho, respeto la aquilatación del tribunal de instancia, cuya facultad al así hacerlo descansa en su sana discreción. *Ruiz Guardiola* v. *Sears Roebuck*, 100 D.P.R. 817, 824, escolio 4 (1972), y casos allí citados.

El tribunal de instancia se equivocó, no obstante, al computar el lucro cesante. La indemnización por lucro cesante, es decir, por la pérdida económica causada por la muerte de una persona, es un elemento reconocido de daños. *Publio Díaz* v. *E.L.A.*, 106 D.P.R. 854, 868 (1978); *Rodríguez* v. *Ponce Cement Corp.*, 98 D.P.R. 201, 218 (1969). Para hacer su cómputo existen tablas actuariales cuya utilidad hemos reconocido. *Publio Díaz* v. *E.L.A.*, supra; *Rodríguez* v. *Ponce Cement Corp.*, supra; *Vda. de Seraballs* v. *Abella Hernández*, 90 D.P.R. 368 (1964). Al hacer el cómputo a base del factor actuarial para la edad de este joven ingeniero fallecido, el tribunal utilizó un factor equivocado de 12.783 aplicable a veinticinco años en vez del correcto, que es 14.4982 para treinticinco años de vida útil productiva que le restaban por vivir. Véase

Markus, *Lawyers and Judges Publishing Co.;* 3 Am.Jur., *Proof of Facts*, pág. 62, y tabla núm. 12 del Apéndice. Utilizó además, como base actuarial para estimar el valor presente de la pérdida de ingresos, la fecha de la muerte y no la fecha de la vista del caso, que se produjo diez años más tarde. Véase *Rodríguez* v. *Ponce Cement Corp.*, supra, págs. 217–219, donde dijimos:

> El lucro cesante, reconocido como un elemento de daños que debe considerarse al fijar el resarcimiento, se compone propiamente de la pérdida de ingresos ocasionada al perjudicado y la disminución de su capacidad productiva. Corresponde al demandante establecer la pérdida de ingresos hasta la fecha de la vista de la causa, generalmente mediante la sencilla prueba de la reducción en los mismos atribuible a causas originadas por el accidente; la disminución en la capacidad productiva requiere una proyección futura del efecto de los daños. No hay regla fija para estimar el importe de la disminución en la capacidad productiva; cuando menos se requieren tres determinaciones básicas: (a) la extensión de la mengua en la capacidad productiva, que ordinariamente se establece mediante una comparación de la habilidad para obtener ingresos antes y después del accidente; (b) la determinación de los efectos de la disminución, si transitoria o permanente; y (c) la fijación de la suma que compensa por esta disminución, considerando tanto su extensión como sus efectos, incluyendo la actualización de la pérdida (*present net worth*). No es necesario que la prueba demuestre con precisión matemática los daños causados por este concepto; basta con que se ofrezca una base razonable que permita hacer una determinación prudente, y no hija de la especulación y la conjetura. Anotación, *Sufficiency of Evidence, in Personal Injury Action, to Prove Impairment of Earning Capacity and to Warrant Instructions to Jury thereon*, 18 A.L.R.3d 88; 16 Am.Jur. *Proofs of Facts*, pág. 701 *et seq.*, 22 Am.Jur.2d, *Damages*, § 89-101.

Finalmente, hay un error de aritmética en el cómputo utilizado por el tribunal de instancia, pues al multiplicar $16,333.34 (dos terceras partes del ingreso estimado de un

año, que fue de $24,500), por 12.783, obtuvo un resultado de $198,499.09. Debió ser $208,789.08. Estos errores de cómputo y en el uso de las tablas actuariales arrojan un balance de cerca de $40,000 en perjuicio de los demandantes y en beneficio para la Autoridad demandada, sin contar una deficiencia por varios miles de dólares más si se hubiese computado el lucro cesante "hasta la fecha de la vista de la causa", que hubiese sido lo correcto a base del citado caso de *Rodríguez* v. *Ponce Cement Corp.*, supra.

Razona la sentencia de este Tribunal, citando de *Publio Díaz* v. *E.L.A.*, supra, y *Suro* v. *E.L.A.*, 111 D.P.R. 456 (1981), que "[l]a *razonabilidad* de la cuantía total no puede hacerse depender de unos cómputos aritméticos, que en fin de cuentas se elaboran sobre unas bases y expectativas, que aunque precisables, no están inmunes de cierto grado de especulación". (Énfasis dado en la sentencia.) Convengo en que es así. Pero aquí no se trata de especular sobre expectativas. Se trata de aplicar criterios jurídicos que este Tribunal ha adoptado, de hacer cálculos aritméticos correctos, y de corregir errores que privan a la viuda y a tres hijitos del ingeniero fallecido en una suma que puede rebasar los $50,000. De esos errores se aprovecha la Autoridad de Energía Eléctrica, demandada que no es insolvente y que por el contrario constituye una de las empresas multimillonarias más poderosas de nuestro país.

Siento mucho no compartir "la paz espiritual del deber cumplido" que mis hermanos jueces han logrado con la sentencia que hoy se emite. Aunque no la comparto, me queda la tranquilidad de conciencia de haber expresado este disenso. Cuando tenga que inclinarse la balanza de la justicia hacia alguna parte, debemos cuidarnos de no caer del lado de la parte más poderosa.