Edward **VAN BLARGAN**, et al., Plaintiffs,

v.

**WILLIAMS HOSPITALITY CORPORATION, as Operators and Managers of the El San Juan Hotel & Casino,** Defendant.

**Civ. No. 90–1389 (JP).**

United States District Court, D. Puerto Rico.

March 7, 1991.

David C. Indiano, Manuel San Juan, Jiménez, Graffam & Lausell, San Juan, P.R., for plaintiffs.

Iván M. Fernández, Falcón & Fernández, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

The defendant, Williams Hospitality, has filed a Motion for New Trial or Alternatively for Judgment Notwithstanding the Verdict (JNOV). This is a tort suit filed by the plaintiffs, Edward Van Blargan and Rose Van Blargan, under the laws of Puerto Rico. The plaintiff alleged that the defendant Williams Hospitality, as operator and manager of the El San Juan Hotel & Casino, failed to provide adequate security for its guests. The plaintiffs further alleged that the failure to provide adequate security resulted in an assault upon Edward Van Blargan in February 1990, when he was a guest at the hotel. The parties stipulated that:

—Following the express instructions of Hotel personnel, after checking in at the front desk the couple proceeded unaccompanied through the patio area to their assigned room to drop off their hand luggage.

—Immediately thereafter, they returned to the veranda area just outside the Hotel's main building.

—The plaintiff Edward Van Blargan again proceeded unaccompanied through the patio area towards the direction of room No. 165.

—As Edward Van Blargan was standing by the door of the lobby of the garden Le Nais, he was assaulted and beaten by an unknown individual.

The case proceeded to trial on January 2, 1991, and on January 8, 1991, the jury found that the Hotel's failure to provide adequate security for its guests, resulted in the attack of Edward Van Blargan by an undetained assailant. The jury assessed $500,000.00 in damages. A JNOV motion may be joined in the alternative with a motion for a new trial. We note at the outset, that these motions have wholly distinct functions and different standards govern their allowance.

## I. JUDGMENT NOT WITHSTANDING THE VERDICT RULE 50(b) STANDARD

■ The standard for granting a JNOV motion is precisely the same as the standard for directing a verdict. The JNOV motion can be granted only if the motion for directed verdict should have been granted. Since it is technically only a renewal of the motion for directed verdict made at the close of evidence, the JNOV motion cannot assert a ground that was not included in the motion for a directed verdict. A JNOV motion cannot be made unless a motion for directed verdict was made by the party at the close of *all the evidence.* *Della Grotta v. Rhode Island,* 781 F.2d 343, 349 (1st Cir.1986); *Martinez*

*Moll v. Levitt & Sons of Puerto Rico,* 583 F.2d 565, 568 (1st Cir.1978).

■ The standard for a JNOV motion is as follows:

Simply stated, it is whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached.

*Id.* at 546.

A JNOV motion only allows the Court to consider the legal question of whether there is sufficient evidence to raise a jury issue. It is thus more stringent than the motion for a new trial standard which will later be explained.

■ In this case, the defendant made a motion for directed verdict at the close of the plaintiff's case, but failed to renew that motion at the close of all the evidence. This failure to renew the motion is fatal to the defendant's present JNOV motion, because it presented substantial evidence which could have changed the court's decision on the motion for a directed verdict. *Gillentine v. McKeand,* 426 F.2d 717, 722–723 (1st Cir.1970).

■ Even if the defendant had renewed their directed verdict motion, the present JNOV motion could not be granted as the "evidence sufficient to create an issue of fact for the jury" standard was not met by the defendant. 9 C. Wright and A. Miller, *Federal Practice and Procedure* § 2524 at 541 (1971). Defendant contends that the verdict was not supported by the evidence. A Court may only set aside a verdict if it is "against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice." *Conway v. Electro Switch Corp.,* 825 F.2d 593, 599 (1st Cir.1987). As there must be a minimum of interference with the jury's province, the evidence must be viewed by the Court most favorably to the party against whom the motion is made, and give that

party the benefit of all reasonable inferences from the evidence. The Court may not set aside a verdict merely because it disagrees or because it would have reached a contrary result. *Tennant v. Peoria & Pekin Union R.R. Co.,* 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944), *reh'g denied,* 321 U.S. 802, 64 S.Ct. 610, 88 L.Ed. 1089 (1944). Moreover, questions of credibility are peculiarly the province of the jury. *Rios v. Empresas Líneas Marítimas Argentinas,* 575 F.2d 986, 990 (1st Cir. 1978).

■ The defendant alleged a number of grounds in its motion for a directed verdict and now contends that a JNOV should be granted on those bases. These allegations, as set forth in the defendant's Motion for New Trial or Alternatively for Judgment Notwithstanding the Verdict (docket # 44), are as follows:

a. The hotel is not an insurer of the safety of its guests and, thus, the evidence showed that the hotel had an adequate security system, with sufficient personnel, and equipment, to meet its duty of exercising reasonable care to maintain its premises safe. The evidence showed that the hotel met that duty.

b. The incident complained of was unforeseeable and could not have been prevented in the exercise of reasonable care, which the hotel took.

c. The evidence of past loss of earnings was not presented, and the evidence was not based on competent evidence (sic) of total and permanent disability.[1]

The motion for directed verdict was denied, and the current JNOV motion must now be denied because there was sufficient evidence to raise an issue of fact for the jury. Several hotel security guards testified that the restricted access entrance to the Le Nais garden was left unattended during the time period when the plaintiff was assaulted, and that the camera failed to

---

1. This ground was not asserted in the defendant's Motion for Directed Verdict and therefore cannot now be used as a new ground for a

JNOV Motion. 9 C. Wright & A. Miller *Federal Practice and Procedure* § 2537 at 598 (1971).

record the assault. In addition, the casino doorperson Jorge Pérez testified that he failed to notify security personnel of the suspicious male in a green shirt whom he had ordered out of the casino. This omission was in direct contravention of the hotel's rules of security. Thus there was sufficient evidence for which the jury could find that the Hotel's security was inadequate. There is clearly a difference between a hotel lobby where guests of all kinds mingle and a passageway to the hotel guest rooms. When individuals become involved in a sudden altercation in a hotel lobby, there are no precautions which the hotel management might take. Such public area attacks are unavoidable. But in this case, Mr. Van Blargan was attacked in a private place. It was private in the sense that the Le Nais garden led to guest rooms and was enclosed by trees and foliage and a swimming pool. Nor was it brightly lit as a public place. A jury could conclude that a hotel has an obligation to provide heightened security in order to avoid any assaults upon its guests, and that the Van Blargan attack was avoidable.

As to the issue of foreseeability, there was substantial evidence presented that the hotel had been aware of the problem of criminal attacks against its guests. *See* Plaintiff's Exhibit 26 (Incident report of assault upon a Mr. F. Gardner, dated May 5, 1989). Although none of the previous criminal attacks of which the hotel had been aware, duplicated exactly the Van Blargan attack in the Le Nais garden, a plaintiff may show foreseeability of a criminal attack, without having to prove prior similar incidents. *Holiday Inns, Inc. v. Shelburne,* 576 So.2d 322 (Fla.App.1991), (commercial occupiers are not entitled to one free assault). Therefore, the defendant's motion for JNOV is not meritorious.

## II. FEDERAL RULE CIVIL PROCEDURE 59 RELIEF STANDARD

█ Pursuant to Fed.R.Civ.P. 59, the Court may order a new trial or grant a remittitur. Although the standard for granting of new trial motions has often been confused with that of the JNOV mo-

tion standard, the First Circuit has stated that the new motion standard has been:

> variously described as "the clear weight of the evidence," *Coffran v. Hitchcock Clinic, Inc.,* 683 F.2d 5, 7 (1st Cir.), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 571, 74 L.Ed.2d 933 (1982); *Johnson v. A/S Ivarans Rederi,* 613 F.2d 334, 351 (1st Cir.1980), *cert. dismissed,* 449 U.S. 1135, 101 S.Ct. 959, 67 L.Ed.2d 325 (1981); and as "the great weight of the evidence." *Borrás v. Sea–Land Service, Inc.,* 586 F.2d 881, 887 (1st Cir.1978). Under either description of the standard, the district court "has the power and duty to order a new trial whenever, in its judgment, the action is required in order to prevent injustice." 11 C. Wright & A. Miller, § 2805.

*Kearns v. Keystone Shipping Co.,* 863 F.2d 177, 181 (1st Cir.1988).

A trial court will set aside a jury verdict only with appropriate caution in order to prevent a miscarriage of justice. *Id.* Unlike a JNOV motion, a motion for a new trial allows the Court to weigh the evidence for itself and consider the credibility of witnesses.

If a new trial is not granted, plaintiff can be given the option to accept a remittitur of its damages. The Court may then issue a remittitur reducing the plaintiff's compensation to the amount "a proper[ly] functioning jury should have found." *Zayas–Green v. Casaine,* 715 F.Supp. 15 (D.P.R. 1989). The trial court has discretion to reduce the amount of the jury's award if such award is not "supported by the weight of the evidence." *Catullo v. Metzner,* 834 F.2d 1075, 1082 (1st Cir.1987). Contrary to the defendant's assertions, "a federal jury which of course in this instance consisted of residents of Puerto Rico, is not bound in making its determination by the amount that the Commonwealth courts have awarded or approved." *La Forest v. Autoridad de Las Fuentes Fluviales de Puerto Rico,* 536 F.2d 443 (1st Cir.1976). Courts should first offer the plaintiff the option of the remittitur, before ordering a new trial, in order to avoid the

expense and inconvenience of additional litigation.

■ A Court is empowered to grant a remittitur when the size of the verdict is against the weight of the evidence. *Catullo v. Metzner*, 834 F.2d 1075, 1082 (1st Cir.1987).

> Remittitur is a practice used in connection with civil cases tried by jury, whereby the court may grant the plaintiff an election to remit a stated portion of the amount awarded as damages, or submit to a new trial. This practice goes back to the opinion of Justice Story, sitting on circuit in, *Blunt v. Little*, [3 Fed.Cas. No. 1578, p. 760 (1822)]. Its use in jury cases has become so widespread and has had the apparent approval of so many Supreme Court cases [see *Dimick v. Schiedt*, 293 U.S. 474, 483, 55 S.Ct. 296, 299, 79 L.Ed. 603 (1935)], that the remittitur practice has become settled and uniformly accepted by the federal courts ...
> If the plaintiff agrees to the remittitur, judgment is entered for the reduced amount. If he refuses to remit the stated portion of the damages, there must then be a new trial.

*Zayas v. Casaine*, 715 F.Supp. 15, 16 (D.P. R.1989).

## III. RULE 59 GROUNDS OF RELIEF

The defendant alleges that Rule 59 relief is warranted for the following reasons: the Court failed to instruct the jury as requested by the defendant; the verdict is against the weight of the evidence; and because the damages are excessive.

### A. JURY INSTRUCTION ERROR ALLEGATION

■ The defendant claims that it was error for the Court to refuse to use the following proposed jury instructions.

1. The damages sustained by the plaintiff were directly caused by an act of a third party committed independently of the defendant's conduct. Under this situation, it is merely necessary to have the defendant demonstrate that it complied with its duty and had taken reasonable measures to control the conduct of third persons. If you find that the defendant duly complied with its duty, you must return a verdict for the defendant. (*Morgan v. Bucks Associates*, 428 F.Supp. 546, [(E.D.Pa.1977)] *Restatement of Torts*, 2d, Section 344).

2. The hotel operator may assume that third persons will not violate the criminal law and that such third person will not intentionally cause harm to a guest. (Procser (sic), *The Law of Torts Handbook*, pp. 173–174 (4th Ed.1971); *Rivera Pérez v. Cruz Corchado*, 119 DPR 8, 20.)

3. An innkeeper is under no duty to exercise any care to warn or to take preventive action until he knows, or has reason to believe, that a third person is acting, or is about to act, in a manner as will cause harm to a guest. (Restatement, (2d) *Torts*, Section 344, Comment (f) (1965).

The defendant's motion neglects to state on what basis it believes that the omission of these instructions constituted trial error. Fed.R.Civ.P. 51 expressly requires that the party assigning error state "distinctly the matter to which he objects and the grounds of his objection." Objections to a charge must be sufficiently specific to bring into focus the precise nature of the alleged error. *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943), *reh'g denied*, 318 U.S. 800, 63 S.Ct. 757, 87 L.Ed. 1163 (1943). This defendant's blanket statement during a Court conference, that it wished to preserve its Rule 51 objections to the omission of specifically numbered proposed jury instructions, does not meet the Rule 51 standard of specificity. 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2554 at 646 (1971).

■ A request for an instruction may not be considered an objection when it relies upon facts rather than legal theory. *Id.* The three instructions proposed by the defendant which the Court refused to utilize were all based upon the facts surrounding the actions of the individual who attacked the plaintiff in the hotel's enclosed Le Nais garden area. This attempt by the

defendant to mislead the jury into concentrating on the actions of the undetained individual rather than the adequacy of the hotel security system, was not regarded as appropriate by this Court when deciding upon acceptable jury instructions.

Furthermore, the use of language from the Eastern District of Pennsylvania and other secondary sources for proposed jury instructions is not proper authority for this Court to rely upon in a diversity suit with the situs of Puerto Rico. Nor is it proper to rely upon misinterpreted excerpts from a tort treatise,[2] or caselaw from a completely distinct context.[3] Thus, Rule 59 relief cannot be granted based upon the Court's refusal to charge the jury with three of the defendant's proposed instructions.

## B. WEIGHT OF THE EVIDENCE ALLEGATION

The defendant alleges that the weight of the evidence presented does not merit a judgment for the plaintiff. After a thorough review of the evidence, the Court concludes that the weight of the evidence does support a judgment for the plaintiff, but that the amount of awarded damages is excessive. The Court, although it may not agree with the jury on all aspects of the verdict, finds that the evidence was sufficient to support the verdict in all of its findings of liability. As to the damages assessed, the Court does find them excessive. Because the Court finds several aspects[4] of the damage awards to be against the weight of the evidence it would be more appropriate and efficient under these

circumstances to simply cure the jury's error with a remittitur, rather than order a new trial. Therefore, a remittitur will be ordered.

The medical evidence demonstrated: that the plaintiff suffered an injury to the right fourth finger (Defendant's Exhibit A), but that there was a surgical operation which could ameliorate the condition; injury to the lip[5] which resulted in a permanent scar (Plaintiff's Exhibit 17), but which was determined to improve with massage and time (Plaintiff's Exhibit 17); head injury which healed very well (Plaintiff's Exhibit 9); eye injury which did not appear to be of a permanent nature (Plaintiff's Exhibit 9); neck pains associated with pre-existing cervical arthrosis (Plaintiff's Exhibit 19); left thumb sprain which could not be objectively determined as a permanent impairment (Plaintiff's Exhibit 19); and clinical evidence of post-traumatic stress disorder with a good prognosis (Defendant's Exhibit B).

The special verdict form instructed the jury to enter an amount of damages as compensation for each of the plaintiffs' tortious injuries. It awarded the following:

$331,000.00 for the pain and suffering of Edward Van Blargan;

$25,000.00 for the pain and suffering of Rose Van Blargan;

$20,000.00 for the medical expenses economically lost by the conjugal partnership;

$124,000.00 for lost earnings economically lost by the conjugal partnership.

2. Defendant's proposed jury instruction number 21 interprets Prosser's open ended language in his tort treatise as an express standard by which the hotel could be judged.

3. *Rivera Pérez v. Cruz Corchado,* 119 D.P.R. 8, 20 (1987), involved a woman who was staying as a guest at a friend's home, and became the victim of an attempted rape by her friend's ex-husband. This case is clearly distinguishable from the Van Blargan attack and thus cannot be used as an example of the duty a commercial hotel must meet in protecting its paying guests.

4. The defendant's contention that the conjugal partnership should not have been awarded damages, is in effect a tardy objection to the Special

Verdict Form and therefore cannot now be considered by the Court. Fed.R.Civ.P. 49(a) provides that failure to object to the provisions of the special verdict form results in waiver of those objections. *Nat'l Equip. Rental v. Stanley,* 283 F.2d 600 (2d Cir.1960); *Columbia Horse & Mule Comm'n v. Am. Ins. Co.,* 173 F.2d 773 (6th Cir.1949). During a Court conference the defendant raised only one objection to the proposed *Special Verdict Form, which the Court* accommodated.

5. Plaintiff's reference to Dr. Raúl Márquez Sárraga's report cannot be taken into consideration, as Defendant's Exhibit C was not admitted into evidence.

Curiously, the damage awards add up to exactly half a million dollars. Although the record reveals that Edward Van Blargan sustained a number of injuries proximately caused by the attack, this Court's weighing of the evidence indicates that the $500,000.00 award did not conform in its entirety to the evidence presented at trial. Our consideration of the type and severity of injuries suffered by the plaintiff clearly demonstrates that $331,000.00 was an over-compensation for any pain and suffering that the plaintiff may have felt. Specifically, the only injury which was proven to be of a permanent nature was the neck injury. Yet the neck pains were shown to be associated with the plaintiff's pre-existing cervical arthrosis. In addition, it was revealed that physical therapy ameliorated the neck pain. (Plaintiff's Exhibit 19). The Court therefore concludes that with a reduction of $216,000.00, the resulting $115,000.00 is a sum which more adequately compensates the pain and suffering associated with the plaintiff's mostly temporal injuries. In addition, the record shows that only $8,232.00 in special damages were proven (Plaintiff's Exhibit 43). Contrary to the plaintiff's argument, any award for medical expenses which exceeds $8,232.00 cannot be deemed future medical expenses when the plaintiff did not provide the jury with any guidance with which to determine future medical expenses. *Hendricks & Associates, Inc. v. Daewoo Corp.*, 923 F.2d 209, 220–21 (1st Cir.1991). A jury cannot be left entirely to guesswork. This is especially compelling when one considers that the jury was specifically instructed that special damages such as medical expenses, had to be proven. Thus a reduction of $11,768.00 would have the medical expenses award conform to the proven amount of $8,232.00.

The amount awarded for lost earnings also failed to conform to the proven evidence. During the testimony of Dr. Rosen, the plaintiff's economic expert, the parties stipulated that 6% was the discount rate designated by Puerto Rico caselaw. *Vda. de Seraballs v. Abella Hernández*, 90 P.R.R. 360 (1964); *Colón v. A.F.F.*, 112 D.P.R. 693 (1982), both cases use Table No. 12 of 3 Am.Jur., *Proof of Facts* at 62.

Plaintiff's Exhibit 24 indicated to the jury that the figure for loss of future earnings would be $113,202.00 when the 6% rate was used, in addition to the $6,845.00 figure calculated for future physical therapy. Thus the evidence only supports a total figure of $120,047.00 for loss of future earning capacity, and the award of $124,-000.00 should be reduced by $3,953.00. Although the Court notes that it is theoretically possible that the loss of earnings figure could be further reduced, in direct proportion to the supplemental income to be derived by the plaintiff were he to have an additional 30 hours to sell insurance instead of driving a truck; the jury was not provided with any evidence with which to determine that the 30 hours per week in which the plaintiff was no longer able to drive a truck, would actually result in increased insurance sales. The plaintiff was never a full time insurance salesperson and there was no evidence presented which suggested that a high school graduate that sold insurance part time to supplement his income as a full time truck driver, would necessarily be successful working full time in the insurance sales business. Additional expert testimony would have been needed in order to support the defendant's theory of direct economic–proportionality. Furthermore, the defendant's cross examination of Dr. Rosen, failed to provide the jury with any guidance as to what method should be employed for reducing the loss of earnings figure with regard to the potential for increased insurance sales. Without the presentation of a methodology, the jury's assessment could only be arbitrary. Thus it cannot be said that the jury's failure to account for the plaintiff's potential income from insurance sales was error.

As the jury's error has been specifically traced to the monetary miscalculations we have just delineated, a remittitur will more appropriately address the jury's error rather than a new trial. 6A J. Moore, *Moore's Federal Practice*, 59–209. "A remittitur award reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence."

*Hendricks & Associates, Inc. v. Daewoo Corp.,* 923 F.2d at 221 (1st Cir.1991) (quoting *Goldstein v. Manhattan Inds., Inc.,* 758 F.2d 1435, 1448 (11th Cir.1985)).

The Court GRANTS, therefore, a RE-MITTITUR of $231,721.00 in the award of damages. Plaintiffs shall inform the Court, within fifteen days of the date of this Order, whether or not they accept the remittitur. Should they refuse the remittitur, a new trial will be granted. Failure to respond in a timely manner will result in the entering of judgment for the reduced amount, and the motion for a new trial will be denied.

IT IS SO ORDERED.