Luis A. ACEVEDO GARCIA,
et al., Plaintiffs,

v.

Hon. Roberto VERA–MONROIG,
et al., Defendants.

No. Civ. 97–2639(JP).

United States District Court,
D. Puerto Rico.

Jan. 30, 2002.

Israel Roldan–Gonzalez, Aguadilla, PR, Miguel A. Pagan–Rivera, Hato Rey, PR, Hector L. Guzman, San Sebastian, PR, for plaintiffs.

John M. Garcia–Nokonechna, Garcia & Fernandez, San Juan, PR, Johanna M. Emmanuelli–Huertas, Ponce, PR, Luis V. Villares–Sarmiento, Yahaida Zabala, Sanchez Betances & Sifre, PSC, San Juan, PR, for Roberto Vera–Monroig, defendant.

Johanna M. Emmanuelli–Huertas, Ponce, PR, Jorge Martinez–Luciano, Law Offices of Pedro Ortiz Alvarez, P.S.C., Ponce, PR, for Municipality of Adjuntas, defendant.

John M. Garcia–Nokonechna, Garcia & Fernandez, San Juan, PR, Johanna M. Emmanuelli–Huertas, Ponce, PR, Luis V. Villares–Sarmiento, Yahaida Zabala, Sanchez Betances & Sifre, PSC, San Juan, PR, Jorge Martinez–Luciano, Law Offices of Pedro Ortiz Alvarez, P.S.C., Ponce, PR, for Irma M. Gonzalez–Delgado, defendant.

### *OPINION AND ORDER*

PIERAS, Senior District Judge.

## I. *INTRODUCTION AND BACK-GROUND*

The Court has before it Defendants' Motion for Judgment Notwithstanding [the] Verdict and/or for a New Trial (**docket No. 251**); and Plaintiffs' Opposition thereto (docket No. 256).

Plaintiffs, all of whom are New Progressive Party members ("NPP"), and former career employees within the Municipality of Adjuntas, filed this action on November 12, 1997 alleging that Defendants the Honorable Roberto Vera Monroig—Mayor of Adjuntas ("Vera"), Irma M. González Delgado—Personnel Director of the Municipality of Adjuntas, who are both members of the Popular Democratic Party ("PDP"), and the Municipality of Adjuntas discriminated against them by terminating their employment with the Municipality on account of their political affiliation. All 82 Plaintiffs allege that Mayor Vega substituted them with members of the PDP. Thirty-three of the 82 Plaintiffs also allege that the Defendants harassed them on account of political affiliation. Plaintiffs' claims are based on the First, Fifth, and Fourteenth Amendments of the United States Constitution, 42 U.S.C. Section 1983 and Puerto Rico law.

On March 13, 1998, the Court held an Initial Scheduling Conference. On November 23, 1998, the Court issued an extensive Opinion and Order denying Defendants' Motion for Summary Judgment. Thereafter, on February 17, 2000, the First Circuit affirmed the Court's denial of summary judgment and dismissed the appeal. *See Acevedo–García v. Vera–Mon-*

*roig*, 204 F.3d 1 (1st Cir.2000). On November 20, 2000, the undersigned held a further scheduling conference with the parties. At said conference, the Court set additional dates for depositions and reset the dates for Pre–Trial and Trial.

On June 25, 2001, the Court met with the parties for the first of several Pre–Trial Conferences.[1] On October 11, 2001, after considering the complexity of this litigation, likelihood of jury confusion, and responsible case management, the Court severed this 82 Plaintiff jury trial into 4 jury trials consisting of 20 Plaintiffs each[2] to be heard by four separate jury panels. *See Acevedo–García v. Vera–Monroig*, 204 F.R.D. 26 (D.Puerto Rico, 2001) (Pieras, J.).

The matter of Plaintiffs Edwin Alexis Plaza Ruiz, Lillian Torres Cabán, Iris B. Rivera Pérez, Sonia Bermúdez Sepúlveda, Nora E. Ruiz González, José D. Aponte, José A. Rodríguez Sobá, Juan A. Hernández Ramos, María E. Irizarry Rodríguez, Miguel A. Camacho Díaz, Luz N. Ramírez Plaza, Helga E. Maldonado Rodríguez, Luis A. Acevedo García, Isabel Vélez Sepúlveda, José J. Rosado Alicea, Fermín Díaz Santiago, Luz Pérez Jiménez, Edirudis Ramos Quiñones, Flor M. Santiago Nieves, and Gabriel Caraballo Ortiz, all of which comprise the first set of 20 Plaintiffs, commenced before a Jury on October 10, 2001. On November 23, 2001, the Jury, after sitting through twenty-seven (27) days of trial, returned a verdict against Defendants and in favor of these Plaintiffs. In its verdict, the Jury determined that political affiliation was a substantial or motivating factor in the implementation of the lay-off plan; that Defendants violated Plaintiffs' due process rights by implementing the lay-off plan in a discriminatory fashion; that Plaintiffs were discharged from their career positions with the Municipality of Adjuntas on account of their political affiliation; and that other individuals were employed to perform the discharged employees positions under different titles, and under different programs, in violation of the law. In total, the aforementioned 20 Plaintiffs were awarded **Six Million Nine–Hundred Fifty–Six Thousand Four Hundred Dollars ($6,956,400.00)** in compensatory and punitive damages. The Court recessed at 12:05 a.m. on November 24, 2001.

On December 20, 2001, the Court held a hearing wherein the issues of reinstatement and attorneys' fees and costs were among the topics discussed. By previous Order, this Court memorialized its Bench Ruling which awarded Plaintiffs **Ninety–Six Thousand Three Hundred Dollars ($96,300.00)** in attorneys' fees and costs and post-judgment interest at the prevailing rate of interest as of the date of judgment.

Defendants now move for judgment as a matter of law, or in the alternative, for a new trial. Defendants also seek remittitur as they have alleged that the damages were excessive in light of the evidence.

---

1. As the prospect of holding one conference for the claims of 82 Plaintiffs was a daunting task for both the Court and the parties, the attorneys for the Plaintiffs and Defendants agreed that the Court sever the Pretrial Conference, and instead hold four separate further Pre–Trial Conferences wherein the causes of action of twenty (20) Plaintiffs per conference would be discussed. In order to flush-out the issues related to these Plaintiffs, and in order to avoid any confusion between the Court and the parties as to the claims of these Plaintiffs, the Court ordered that the parties file four (4) separate sets of informative motions i) detailing their theory of the case, ii) identifying the witnesses that they would use for each Plaintiff, and iii) identifying the documentary evidence that they would use for each Plaintiff.

2. The last trial will consist of 22 Plaintiffs.

*See Catullo v. Metzner,* 834 F.2d 1075, 1082 (1st Cir.1987) (The court may reduce the damages award when its size is against the weight of the evidence.). For the reasons set forth herein, Defendants' motion (**docket No. 251**) is hereby **DENIED.**

## II. *LEGAL STANDARDS FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL*

Defendants move for judgment as a matter of law and a new trial pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure. Defendants contend that 1) Plaintiffs were not valid career employees and therefore did not possess a property interest in their employment; 2) the evidence in the record does not sustain a finding of political discrimination; 3) Plaintiffs Edwin Plaza Ruiz, Lillian Torres Cabán, Iris B. Rivera Pérez and José Rodríguez Sobá, all of whom received verdicts in their favor for political harassment, did not establish a cause of action for political harassment under relevant case law; 4) Defendants Vera Monroig and González are entitled to qualified immunity; and 5) the verdict was excessive.

As a preliminary matter, the Court notes that Defendants' haste to challenge the Jury's verdict has compromised the quality of their motion and has thus made its resolution unnecessarily difficult for the Court. While Defendants have raised several grounds for relief in the instant motion, they summarily discuss them all under the auspices of a motion for judgment notwithstanding the verdict and simply request a new trial in the alternative. It is well understood that the bases for seeking judgment notwithstanding the verdict are not the same as the bases for seeking a new trial. *See* discussion *infra.* Moreover, the standards of review that apply to both motions differ. As a result of Defendants' generalizations, the Court has been forced to sort through the arguments and redirect the various grounds brought by Defendants into the proper motion so that each is addressed under the proper standard.

The only grounds upon which Defendants may bring a motion for judgment notwithstanding the verdict is that the Jury's verdict as to political discrimination for all 20 Plaintiffs, and as to political harassment for Plaintiffs Edwin Plaza Ruiz, Lillian Torres Cabán, Iris B. Rivera Pérez and José Rodríguez Sobá, was not supported by legally sufficient evidence. The three remaining contentions; that Plaintiffs were not valid career employees and therefore did not possess a property interest in their employment; that Defendants Vera Monroig and González are entitled to qualified immunity; and that the verdict was excessive based on the weight of the evidence are proper grounds for a new trial, and are not applicable for a judgment notwithstanding the verdict.

The standard for granting a judgment notwithstanding the verdict made pursuant to Rule 50 is identical to the standard for directing a verdict, since it is technically just a renewal of a motion for directed verdict made at the close of all evidence. *Van Blargan v. Williams Hospitality Corp.,* 759 F.Supp. 940, 941 (D.Puerto Rico 1991) (Pieras, J.). Accordingly, it can be granted only if a motion for directed verdict should have been granted. *Id.* Rule 50 provides in pertinent part:

> If during a trial by jury a party has been fully heard on a issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue. Motions for judgment as a matter of law may be made at any time before submis-

sion of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

Fed.R.Civ.P. 50(a).

█ The trial court's freedom to overturn a jury verdict and enter a judgment as a matter of law is severely circumscribed, and "[a] court is without authority to set aside a jury verdict and direct entry of a contrary verdict unless the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." *Keisling v. SER-Jobs for Progress,* 19 F.3d 755, 759–60 (1st Cir.1994); *see also, PH Group Ltd. v. Birch,* 985 F.2d 649, 653 (1st Cir.1993); *Conway v. Electro Switch Corp.,* 825 F.2d 593, 598 (1st Cir.1987). When ruling upon a motion for judgment notwithstanding the verdict, the trial judge may not evaluate the credibility of the witnesses, the weight of the evidence, or attempt to resolve conflicting testimony, because credibility questions are within the exclusive province of the jury. *Conway,* 825 F.2d at 598. *Rios v. Empresas Lineas Marítimas Argentinas,* 575 F.2d 986, 990 (1st Cir.1978). The judge must view the evidence in the light most favorable to the non-movant and grant that party every reasonable inference that the jury might have found in its favor. *Keisling,* 19 F.3d at 759–60; *Davet v. Maccarone,* 973 F.2d 22, 28 (1st Cir. 1992); *Wildman v. Lerner Stores Corp.,* 771 F.2d 605, 607 (1st Cir.1985). He may not set aside a verdict merely because he disagrees with it or because he could have come to a different conclusion. *Van Blargan,* 759 F.Supp. at 942, (*citing Tennant v. Peoria & Pekin Union R.R. Co.,* 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944), *reh'g denied,* 321 U.S. 802, 64 S.Ct. 610, 88 L.Ed. 1089 (1944)). He is required to restrict his analysis to only consider the legal question of whether there is suffi-

cient evidence to raise a jury issue. In this way, it is more stringent than the standard employed when evaluating a motion for a new trial. *Id.*

█ By contrast, when evaluating a motion for a new trial pursuant to Rule 59, the Court may weigh the evidence for itself and consider the credibility of witnesses. *Id.* at 943. However, the Court does not enjoy unbridled freedom to grant new trials, because a jury verdict may only be overturned in the most "compelling of circumstances". *See Wells Real Estate Inc. v. Greater Lowell Bd. of Realtors,* 850 F.2d 803, 811 (1st Cir.), *cert. denied,* 488 U.S. 955, 109 S.Ct. 392, 102 L.Ed.2d 381 (1988). As this Circuit has stated, "the trial judge must give due deference to the jury's constitutionally sanctioned role as finder of fact." *Raymond v. Raymond Corp.,* 938 F.2d 1518, 1521–1522 (1st Cir. 1991).

Just as with a judgment notwithstanding the verdict, a trial judge may not upset the jury's verdict simply because he might have produced a different outcome had the facts been pled before him. *Velázquez v. Figueroa–Gómez,* 996 F.2d 425 (1st Cir.), *cert. denied* 510 U.S. 993, 114 S.Ct. 553, 126 L.Ed.2d 454 (1993); *Taber Partners I. v. Merit Builders, Inc.,* 917 F.Supp. 112, 116 (D.Puerto Rico 1996) (Pieras, J.). So impermeable is a jury's verdict on the merits that a trial judge may only disturb it on the rarest of occasions when it is clear that no reasonable jury could have found for the verdict winner on the evidence provided. The First Circuit Court of Appeals has stated thus:

> In the federal system, a trial judge cannot displace a jury's verdict merely because he disagrees with it or would have found otherwise in a bench trial. Absent error of law ... the judge's prerogative to set aside the jury verdict crystallizes only if it is quite clear that the

jury has reached a seriously erroneous result. In our litany of cases, we have come to refer to this criterion as the manifest miscarriage of justice standard. *Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1333 (1st Cir.1988); *see also Sánchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 717 (1st Cir.1994) (A new trial may be granted only if the evidence is "grotesquely lopsided" in favor of the movant, and if it is obvious that the jury verdict, if allowed to stand, would result in a blatant miscarriage of justice).

With these restrictive standards in mind, the Court now addresses Defendants' arguments.

## III. *ANALYSIS*

### A. JUDGMENT NOTWITHSTANDING THE VERDICT

#### 1. *Political Discrimination*

■ Defendants contend that based on the evidence presented by Plaintiffs at trial, no reasonable person could have found that Defendants politically discriminated against Plaintiffs or that Defendants politically harassed Plaintiffs Edwin Plaza Ruiz, Lillian Torres Cabán, Iris B. Rivera Peréz and José Rodríguez Sobá. The Court is not permitted to weigh the evidence, and may only evaluate whether Plaintiffs provided evidence that could support their respective allegations. After considering the Defendants arguments,[3] the Court adheres to the view that it expressed at trial when it denied Defendants' motion for a direct verdict. *See Acevedo–García v. Vera–Monroig*, 170 F.Supp.2d 169 (D.Puerto Rico 2001) (Pieras, J.) (finding that evidence reflected that there was a triable issue of fact for the jury).

All Plaintiffs testified that they were members of the New Progressive Party.

Evidence was submitted that the atmosphere within the Municipality of Adjuntas was highly political, and that the political affiliation of municipal employees was common knowledge to both co-workers and supervisors. Plaintiffs testified that they were politically active in the election directly preceding the change in administration and did not support the Defendants' party. Plaintiffs also produced evidence that the vast majority of discharged municipality employees did not belong to the same political party as Defendants. Evidence was further presented that the Vera Administration knew of Plaintiffs' political affiliations prior to their discharge and that Plaintiffs' work responsibilities were decreased following the administration's rise to power. All Plaintiffs testified that Defendants did not take requirements of the "Lay–Off Plan for Municipality of Adjuntas Employees", ("Lay–Off Plan") into consideration prior to dismissing them and that after their dismissal, new employees who were affiliated with Mayor Vera Monroig's political party were hired to perform their job functions. Based on the foregoing, the Court **FINDS** that Plaintiffs presented legally sufficient evidence of political discrimination.

#### 2. *Political Harassment*

■ Eight of the aforementioned 20 Plaintiffs brought forth claims of political harassment against Defendants. However, the Jury returned a verdict in favor of only the following four: Edwin Plaza Ruiz, Lillian Torres Cabán, Iris B. Rivera Peréz and José Rodríguez Sobá.

a. Edwin Plaza Ruiz provided testimony that he was not permitted to use the bathrooms at the municipality because he was an NPP member, and that as a result

---

**3.** Defendants failed to provide direct citations to the trial transcript in support of their argument. Therefore, in reviewing this motion, the undersigned has relied on his own recollections and trial notes.

he was forced to relieve himself in the street. He also testified that even though he was a well-known proponent of the NPP party, he was ordered to announce and introduce PDP member Mayor Vera during a municipal activity, and was thereafter mocked by PDP members as a result of his participation in the activity.

b. Lillian Torres Cabán testified that prior to Mayor Vera's administration, she had been performing the duties of an office clerk and had been fielding phone calls and preparing reports for the director. She testified that after Mayor Vera came to power, she was informed that she no longer had the use of her desk. She was then ordered to leave her office and sweep the streets.

c. Iris B. Rivera Pérez testified that as a result of her membership in the NPP, she was transferred from her position as an office clerk within the Office of the Mayor to an office on the grounds of the cemetery which was closed in, had a broken door and contained crucifixes, coffin lids, broken rusted chairs, lawnmowers and other materials for the cemetery. She testified that she had no work to do in the cemetery, but was forced to remain there alone until she was fired.

d. José A. Rodríguez Sobá testified that after the Vera administration took over, he was not allowed to perform any of his duties as Assistant Director of Public Works. Sobá testified that when he complained to his supervisor, he was told that city hall (Defendants) wanted to "blow his head off" and that he was therefore not allowed to do anything. As a result, he was not allowed to enter his office, and had to remain idly in the yard until he was terminated.

The undersigned heard the evidence of political discrimination and political harassment firsthand, and after careful consideration of the arguments, believes that Plaintiffs presented sufficient evidence for the case to go to the Jury on questions of political discrimination and political harassment. Accordingly, Defendants motion for judgment notwithstanding the verdict is hereby **DENIED**.

## B. NEW TRIAL

### 1. *Plaintiffs' Status as Career Employees*

■ Defendants assert that Plaintiffs did not possess a property interest in their employment within the Municipality of Adjuntas because they were not valid career employees. To be sure, the Court is surprised that Defendants have brought forth this argument. First, all twenty Plaintiffs took the stand and testified to the fact that they were career employees. Second, and more importantly, Defendants stipulated that all Plaintiffs were in fact career employees within the Municipality of Adjuntas. Third, Defendants' posture throughout the trial showed that they accepted the fact that Plaintiffs were career employees. In relation to the date upon which notice of the impending lay-offs was mailed to Plaintiffs, Defendants stipulated that on July 29, 1997, notice was sent to all **career employees**. (Emphasis ours.) *See Acevedo–García v. Vera Monroig*, Civil Jury Instructions on Stipulations of Fact, ¶¶ 1 and 27 (Pieras, J.). Moreover, the Jury Instructions, which were agreed to by both Plaintiffs and Defendants, read as follows:

The First Amendment of the Constitution of the United States gives every citizen the right to freedom of speech and political association. The protection of this right extends to the prohibition of being fired, transferred, not promoted or hired because of an individual's affiliation with a particular political party. This means that, except for "trust" employees, governmental or public employees may not be discharged by governmental authority be-

cause of their political affiliation, because such is protected by the First Amendment. Trust employees are employees who occupy policy or trust positions, discretionary positions, work closely with Defendants in their officially elected capacity, act as public representatives or alter egos of elected officials, or have access to confidential information not generally available to other employees of the agency. You are instructed that the federal civil rights statute, under which Plaintiffs have sued in this case, provides that a person may seek relief in this Court by way of damages against any person who, under color of state law or custom, subjects such person to the deprivation of any rights, privileges or immunities secured or protected by the Constitution or laws of the United States. In order for the Plaintiffs to prosper in this suit for an award of money damages, Defendants must have acted "under color" of state law or custom and violated the Plaintiffs' rights under the Constitution of the United States and under the Puerto Rico Constitution.

**You are instructed that all 82 Plaintiffs are career employees.** (Emphasis ours.)

*Acevedo–García v. Vera Monroig,* Civil Jury Instructions on Causes of Action under 42 U.S.C. § 1983, I.B (Pieras, J.).

As Defendants stipulated that Plaintiffs were career employees within the Municipality of Adjuntas, and therefore possessed a property right to their employment, they were not permitted to attack this fact during trial. The Court will not allow them to challenge this stipulated fact now. Accordingly, Defendants' motion for a new trial premised on the argument that Plaintiffs did not have a property right to their employment within the Municipality of Adjuntas because they were not valid career employees is hereby **DENIED.**

### 2. *Qualified Immunity*

On November 23, 1998, this Court denied Defendants' motion for summary judgment as to qualified immunity, after having found issues of fact remaining as to co-Defendants' motivations for implementing the Lay–Off Plan for Municipality of Adjuntas Employees ("Lay–Off Plan"). *See Acevedo–García v. Vera–Monroig,* 30 F.Supp.2d 141 (D. Puerto Rico 1998) (Pieras, J.), *aff'd Acevedo–García v. Vera–Monroig,* 204 F.3d 1 (1st Cir.2000). In the Opinion and Order affirming the undersigned's denial of summary judgment, Judge Lipez stated, "Vera and González concede that the law on politically-motivated terminations is clearly established." *Acevedo–García v. Vera–Monroig,* 204 F.3d at 10. After the Jury found that political affiliation was a substantial or motivating factor for Defendants' actions in implementing the Lay-off Plan; that Defendants violated Plaintiffs' First Amendment Rights by discriminating against them based on their political affiliation; and that Defendants knew that their conduct violated the law, this Court, by Opinion and Order dated December 3, 2001 dismissed the defense of qualified immunity as a matter of law. In the instant motion, Defendants attempt to resurrect this now dead issue by arguing that they are entitled to qualified immunity in light of the recent U.S. Supreme Court case of *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Defendants also argue that based on the specific context of this case, it was not clearly established that Plaintiffs had a right not to be laid off by the Lay-off Plan. Defendants' argument shows that they have misconstrued the legal question that is relevant to determining qualified immunity. The proper inquiry is whether the law on political discrimination was clearly established at the time that Defendants acted. In other words, the relevant question that the

Court must resolve as a matter of law is: "Whether Plaintiffs had a right to not be discriminated against on account of their political beliefs at the time that Defendants implemented the lay-off plan in a discriminatory fashion." The question is not "whether Plaintiffs had a right not to be laid off by the Lay-off plan," as Defendants suggest.

 The doctrine of qualified immunity protects government officials who perform discretionary functions from suit and from liability for monetary damages under 42 U.S.C. § 1983. *See Roldán–Plumey v. Cerezo–Suárez*, 115 F.3d 58, 65 (1st Cir.1997). The general rule regarding qualified immunity is that government officials are immune from suit and liability when their conduct does not violate clearly established statutory authority or constitutional rights, which a reasonable person should have known of at the time of the conduct at issue. *Mitchell v. Forsyth*, 472 U.S. 511, 524, 105 S.Ct. 2806, 2814, 86 L.Ed.2d 411 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Acevedo–García v. Vera–Monroig*, 204 F.3d 1, 10 (1st Cir.2000) (the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").

 When assessing a claim of qualified immunity, the Court should first consider whether the allegations of the complaint make out a constitutional rights claim. *Wilson v. Layne*, 526 U.S. 603, 119 S.Ct. 1692, 1694, 143 L.Ed.2d 818 (1999). If the answer to the first inquiry is in the affirmative, the Court must then determine as a matter of law, whether the constitutional right in question was clearly established at the time of the alleged violation. *St. Hilaire v. Laconia*, 71 F.3d 20 (1st Cir.1995), *cert. denied* 518 U.S. 1017, 116 S.Ct. 2548, 135 L.Ed.2d 1068 (1996). If this too is in the affirmative, the final inquiry is whether a similarly situated official reasonably "should have understood that [his or her] conduct violated" that right. *Id.* at 24.

In *Saucier*, a demonstrator brought suit against a military police officer alleging that the officer used excessive force to arrest him in violation of his Fourth Amendment rights. The officer moved for qualified immunity. Both the District Court and the Ninth Circuit Court of Appeals declined to grant Officer Saucier qualified immunity. After finding that the law governing the Saucier's conduct was clearly established, the Ninth Circuit proceeded to consider whether the officer's conduct was reasonable in light of the clearly established law. However, after reviewing the question, the Circuit concluded that this inquiry and the reasonableness inquiry for excessive force cases were identical, and therefore found summary judgment based on qualified immunity to be inappropriate. After laying forth the factors that are relevant for assessing a constitutional excessive force claim, (the severity of the crime, whether the suspect poses a threat to officers or others, and whether the suspect is actively resisting arrest or attempting to flee), the Supreme Court reversed the Court of Appeals and held that the inquiry for assessing qualified immunity and the inquiry for excessive force cases were distinct, and therefore should not be merged.

Defendants have failed to express, and the Court is at a loss to see how the *Saucier* case can revive the now defunct qualified immunity argument. Saucier involved a military police officer's mistaken but reasonable belief that excessive force was needed to protect the Vice President of the United States from an unknown demonstrator. Because high security measures are needed to safeguard a United States Vice President, because the de-

gree of danger posed by the demonstrator was unknown, and because law enforcement officers are usually required to make split-second, life and death decisions, the Court held that the officer acted reasonably, albeit possibly mistakenly, when he determined that the demonstrator posed a threat to the Vice President, removed him from the scene, shoved him, and detained him in a police van. Qualified immunity protected the officer from suit and liability for actions which, while mistaken, were reasonable under the circumstances.

■ In contrast, as this case does not involve a potentially life-threatening situation which would require split-second decision-making on the part of an official, it is distinguishable from *Saucier*. This case is a political discrimination case, and involves allegations that the Mayor and the Personnel Director of the Municipality of Adjuntas orchestrated to and intentionally discriminated against opposition party career employees by dismissing them from their municipal positions on account of their political affiliation, in violation of the First Amendment and due process of law. Additionally, Mayor Vera Monroig and Irma González acted over a 10–month period of time. As they had a long period within which to access the situation, the probability that they could have made a "reasonable mistake" as in the case of an officer guarding the Vice–President, is largely diminished. Moreover, by awarding punitive damages to Plaintiffs, the Jury found that Mayor Vera and Irma González **intended** to violate Plaintiffs' constitutional rights. This finding of intent renders Defendants' argument of "reasonable mistake" moot.

For the record, the prohibition against political discrimination was clearly estab-

lished in 1997 when Defendants acted to violate Plaintiffs' constitutionally protected rights. A jury trial was held wherein Plaintiffs presented evidence that supported their allegations of political discrimination. The evidence led the Jury to conclude that political affiliation was in fact a substantial or motivating factor for Mayor Vera Monroig's and Irma González's actions. In sum, the Jury found political discrimination was behind the dismissals of Plaintiffs from their employment with the Municipality of Adjuntas.[4]

Therefore, the qualified immunity argument that Defendants now make is simply an attempt to re-write the facts and re-litigate this case. As previously stated, the Jury found that Defendants Vera Monroig and Irma González acted with intent to discriminate. On December 3, 2001, the Court ruled on this issue as a matter of law. Therefore, Defendants' motion for new trial based on the argument that they are entitled to qualified immunity is hereby **DENIED.**

### 3. *Excessiveness of the Verdicts' Damages Awards*

Defendants also argue that the Jury's damage award should not be permitted to stand because it is not supported by the weight of the evidence. In the alternative, they request remittitur.

■ When evaluating a motion for new trial based on an argument that the damages award was excessive, the Court should only concern itself with the quality of the evidence presented at trial, and should not compare the size of the award to other awards. *Havinga v. Crowley Towing & Transp. Co.*, 24 F.3d 1480, 1488 (1st Cir.1994). Absent the most unusual of

---

4. All Plaintiffs testified that they were affiliated with the opposition political party and that the vast majority of terminated employees were also affiliated with the opposition party.

Further Plaintiffs testified that new employees affiliated with the incumbent political party were hired to perform their duties within the municipality.

circumstances, a Court should not overturn a jury award that is based on the evidence. *Gutiérrez–Rodríguez v. Cartagena*, 882 F.2d 553, 579–80 (1st Cir.1989). All evidence must be viewed in the light most favorable to the prevailing party, and a damage award should not be disturbed as long as it is rationally connected to the claim. *Smith v. Kmart Corp.*, 177 F.3d 19, 30 (1st Cir.1999); *Velázquez v. Figueroa–Gómez*, 996 F.2d 425, 428 (1st Cir.), *cert. denied* 510 U.S. 993, 114 S.Ct. 553, 126 L.Ed.2d 454 (1993). The Court should not interfere with a damage award unless it is grossly excessive, inordinate, shocking the conscience, or so high that allowing it to stand would be unjust. *Smith*, 177 F.3d at 30; *Velázquez*, 996 F.2d at 428; *Betancourt v. J.C. Penney*, 554 F.2d 1206, 1207–1209 (1st Cir.1977).

■ The undersigned witnessed firsthand the evidence presented during this trial, and has evaluated the evidence in relation to the damage award. While discrimination does exist, rarely can a plaintiff present "smoking-gun evidence" of it. *See Freeman v. Package Mach.*, 865 F.2d 1331, 1341 (1st Cir.1988). Despite this fact, the undersigned is of the opinion that Plaintiffs in the instant case provided strong evidence of political discrimination. All Plaintiffs were active members of the NPP party and were fired less than one year after PDP Mayor Vera Monroig assumed office. Moreover, new employees were brought in to perform the dismissed Plaintiffs' functions. Plaintiffs Edwin Plaza Ruiz, Lillian Torres Cabán, Iris B. Rivera Peréz and José Rodríguez Sobá also presented evidence that after Defendants came to power within the municipality, their working conditions were made unreasonably inferior as a result of their political affiliation. Plaintiffs were dismissed from their career positions within the Municipality of Adjuntas on October 31, 1997, and, with very few exceptions, have not been rehired there since that time. Other

employees of the PDP are performing the work they used to perform. · Plaintiffs have clearly suffered damages. All testified to their lost earnings, and to the emotional hardships that resulted from Defendants' conduct.

This Court adopts the view of this Circuit, and finds that in a case such as this "[t]ranslating legal damage into money damages is a matter 'particularly within a jury's ken,' especially in cases involving intangible, non-economic losses." *Smith*, 177 F.3d at 30 (citing *Wagenmann v. Adams*, 829 F.2d 196, 215 (1st Cir.1987) and *Correa v. Hospital San Francisco*, 69 F.3d 1184, 1197 (1st Cir.1995), *cert. denied* 517 U.S. 1136, 116 S.Ct. 1423, 134 L.Ed.2d 547 (1996)). In addition to loss of earnings, all Plaintiffs testified that Defendants' conduct caused them extreme stress and emotional hardships. The Court is of the opinion that a reasonable jury could have properly concluded that Defendants discriminated against Plaintiffs on account of political affiliation and that such discrimination resulted in the damages that Plaintiffs claim. The Court believes that the Jury considered all of the evidence presented, and fashioned their award in light of Plaintiffs' economic damages, and damages resulting from pain and suffering. Simply put, the verdict was not against the weight of the evidence. Considering the significant disruptions which Defendants' actions caused to Plaintiffs' lifestyles, the Court does not find that the compensatory damages and punitive damages award for each individual Plaintiff as it appears in each verdict form, and which amounted to a combined total of **Six Million Nine–Hundred Fifty–Six Thousand Four Hundred Dollars ($6,956,400.00)** is grossly excessive or inordinate. Further, after weighing the evidence, the Court finds that the damage award also does not shock the conscience. *See Smith*, 177 F.3d at 30; *Velázquez*, 996 F.2d at 428; *Betancourt*, 554 F.2d at 1207–1209. Accordingly,

Defendants' motion for new trial or for re-mittitur based on the argument that the damages award was excessive is hereby **DENIED.**

## IV. *CONCLUSION*

For the foregoing reasons, Defendants Roberto Vera Monroig's and Irma M. González's Motion for Judgment Notwith-standing [the] Verdict and/or for a New Trial (**docket No. 251**) is hereby **DENIED.**

**IT IS SO ORDERED.**