TABER PARTNERS I, Plaintiff,

v.

INSURANCE COMPANY OF NORTH AMERICA, INC., Defendant.

TABER PARTNERS I, Plaintiff and Counterdefendant,

v.

MERIT BUILDERS, INC., Defendant, Counterclaimant & Third-party Plaintiff,

v.

VICTOR TORRES & ASSOCIATES, INC. and Desarrollos Metropolitanos, Inc., Third-party Defendants.

Civil Nos. 91–1220 (JP), 91–1211 (JP).

United States District Court, D. Puerto Rico.

Feb. 16, 1996.

Rubén T. Nigaglioni, Ledesma, Palou & Miranda, Hato Rey, PR, for Plaintiff.

Eric Tulla, Rivera, Tulla & Ferrer, Hato Rey, PR, for Defendant.

Edilberto Berríos Pérez, Hato Rey, PR, for Víctor Torres.

Humberto Guzmán Rodríguez, Fiddler, González & Rodríguez, San Juan, PR, for Desarrollos.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it Taber Partners I's (hereinafter "Taber") second motion for a new trial pursuant to Fed.R.Civ.P. 59(a)(1), renewed motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b); motion to alter or amend judgment through remittitur pursuant to Fed.R.Civ.P. 59(e); and motion to amend judgment regarding prejudgment interest; Insurance Company of North

America, Inc.'s (hereinafter "INA") opposition, and Merit Builders, Inc.'s (hereinafter "Merit") opposition (docket Nos. 569, 577 and 607). For the following reasons, Taber's motion is hereby **DENIED.**

## I. *INTRODUCTION*

This case arises out of the renovation and expansion of the Ambassador Plaza Hotel and Casino, in Condado, Puerto Rico. The owner of the hotel, Taber, first filed a complaint against Merit, the general contractor, asserting that Merit had performed its construction duties in a defective and late manner, thereby breaching its contractual obligations under the three construction contracts, the Cost Plus Contract, the Tower Lump Sum Contract, and the Specialty Contracts, as well as the Interim Agreement. Taber also alleged that Merit engaged in allegedly tortious activity and fraud. Taber also sued INA, the insurance company which issued a performance bond guaranteeing the performance of Merit's work under the Tower Lump Sum Contract. Merit in turn, counterclaimed against Taber for the collection of monies for certifications of payment for work performed under the contracts and retainages, breach of contract for failure to pay pending change orders, including the chase claim, and fraud. In addition, Merit filed a third party complaint against Desarrollos Metropolitanos, Inc. (hereinafter "Desarrollos"), the subcontractor responsible for the. concrete, plaster and masonry work, asserting that if any of the concrete, plaster or masonry work in the construction project were found to be defective, then Desarrollos had the contractual obligation to indemnify Merit for any damages incurred as a result of Desarrollos' defective performance. Finally, Merit filed a third party complaint against Víctor Torres & Associates (hereinafter "VTA"), the engineering inspector of the project, asserting that VTA had breached its contractual duties, and had tortiously interfered with the performance of the principal contracts, and conspired to defraud.

Prior to trial, the Court found that due to the complexity of the factual issues, it was necessary to ensure that all claims as presented to the jury were void of ambiguity and in conformity with the law. Therefore, this Court disallowed Taber's claims regarding "Taber's alleged loss of the hotel's value, the alleged extra expenditures spent on repair and maintenance costs, as well as any other allegation of consequential damages which were clearly not foreseeable by Merit when the construction contract was signed." Further Pretrial Conference Order (docket No. 313). Thus the Court limited Taber's claims to breach of contract based upon Merit's allegedly defective and late performance, and to the resulting damages.

The Court equally limited Merit's evidence and causes of action by preventing the presentation at trial of any evidence regarding consequential damages such as the alleged damages to Merit's. reputation, and its inability to invest and profit from the monies illegally withheld by Taber. These alleged consequential damages were not foreseeable at the time the parties entered into the contracts. Finally, this Court held that both parties had failed to plead their allegations of fraud with specific particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Therefore, both parties were prevented from presenting claims of fraud to the jury during trial.

After Taber and Merit had presented all their evidence, the Court found that there was no evidence upon which a reasonable jury could find that VTA had tortiously interfered with the contracts between Taber and Merit, or had breached its contractual obligations with Merit. Consequently, the Court granted VTA's Rule 50 motion for judgment as a matter of law and dismissed all claims against VTA.

Therefore, the only questions which were presented to the jury were as follows: whether Merit breached its contractual obligations by performing defectively and late; whether INA was liable to Taber under the performance bond; whether Desarrollos had obligation to indemnify Merit for the defects in the concrete, plaster or masonry work; and whether Taber had breached its contractual obligations with Merit. After a fourteen week trial, the jury returned its verdict, holding that Merit had not breached any of the

contracts since Merit's performance was neither late nor defective. Consequently, neither INA nor Desarrollos were liable to Taber. As to the last issue, the jury found that Taber had breached the contracts by failing to pay Merit for work performed and determined the amount of damages at $1,597,-414.00, the amount that Merit was seeking on its counterclaim against Taber. Pursuant to a pre-verdict agreement of the parties, the Court included interest in the amount of the judgment, calculated according a provision in the parties' contracts.

## II. *TABER'S ALLEGATIONS*

Taber alleges that the jury verdict cannot stand for various reasons. First, Taber moves for a renewed motion for judgment as a matter of law contending that no reasonable jury could have disregarded the evidence presented, which demonstrated that Merit's work was defective and late. Second, Taber moves for a new trial asserting that the jury disregarded the evidence when reaching its verdict, and that this Court erred in denying Taber's request to call three individuals as witnesses. Third, Taber moves, in the alternative, for remittitur of the amount of the judgment, to reflect a reduction in the contract price, by the amount of the deductive change orders submitted by Taber and approved by VTA. Fourth, Taber moves to amend the final judgment to remove the amount of interest assessed on the certifications of payment and pending change orders that Taber owes Merit, and to add interest calculated on the deductive change orders from the date they were approved by VTA.

## III. *MERIT'S AND INA'S ALLEGATIONS*

Merit argues that Taber's motion is both procedurally and substantively defective. First, Merit asserts that Taber failed to move this Court for judgment as a matter of law upon the close of Merit's evidence based upon the grounds which it now raises. Therefore, Merit asserts, Taber has waived its right to seek judgment as a matter of law based upon these newly raised arguments. Second, Merit contends that Taber has failed to raise any valid basis for a new trial or for an amendment of the judgment, since the jury verdict is based upon the evidence. Finally, Merit contends that the amount of prejudgment interest was properly calculated, and should not be amended. INA also attacks the procedural posture of the renewal for the motion for judgment as a matter of law, asserting that Taber failed to bring a Rule 50 motion at the close of all evidence based upon its claim against INA.

## IV. *MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(b)*

■ A motion for judgment as a matter of law, like a motion for summary judgment, questions whether a reasonable jury could reach only one result based upon the evidence. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). Rule 50(a)(1) of the Federal Rules of Civil Procedure reads as follows:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Rule 50(b) of the Federal Rules of Civil Procedure provides that after the jury has returned a verdict, the court may revisit a motion for judgment as a matter of law submitted pursuant to Rule 50(a) made at the close of all evidence.

■ As a procedural matter, the party renewing a motion for judgement as a matter of law pursuant to Rule 50(b) "is required to have moved for judgment as a matter of law at the close of all evidence." *Keisling v. SER–Jobs for Progress, Inc.,* 19 F.3d 755, 758 (1st Cir.1994); *accord Jusino v. Zayas,* 875 F.2d 986, 991 (1st Cir.1989). In addition, this motion must include every claim upon which the party bases its request for judgment as a matter of law. Failure to do so is

a "fatal omission." *Sánchez v. Puerto Rico Oil Company*, 37 F.3d 712, 723 (1st Cir.1994).

■ Merit asserts that the issues raised in Taber's current motion were not raised by Taber in its prior motions for judgment as a matter of law, and therefore Taber has waived its right to request judgment as a matter of law post-verdict based upon these grounds. At the end of the presentation of Merit's evidence, and again at the end of the presentation of INA's and Desarrollos' evidence, Taber moved for judgment as a matter of law pursuant to Rule 50(a). During its prior arguments pursuant to Rule 50(a), Taber only asserted two basis for entry of judgment: that Merit's claims for extension of time must be denied as a matter of law because Merit failed to comply with contractual provisions concerning the procedure for requests for extension of time, and that Merit's argument concerning cardinal change was not sufficiently based in the facts. Taber's motion was granted in part and denied in part. On August 18, 1995, the Court entered judgment as a matter of law on the issue of cardinal change, and ordered that the issue of Merit's claims for extension of time be presented to the jury.

Taber's prior motions never requested judgment as a matter of law based upon the evidence presented concerning Merit's defective and late performance. Therefore, Taber's current motion is procedurally defective. The motion raises issues which were never presented to the Court in a motion for judgment as a matter of law previously. It is well settled that "[a] motion for judgment as a matter of law made at the close of all the evidence preserves for review only those grounds specified at the time, and no others." *Correa v. Hospital San Francisco*, 69 F.3d 1184, 1192 (1st Cir.1995). Therefore, Taber's renewed motion for judgment as a matter of law is hereby **DENIED**.

## V. *MOTION FOR NEW TRIAL—RULE 59*

■ Rule 59 of the Federal Rules of Civil Procedure broadly permits a trial court to order a new trial, based upon the motion of a party or upon the Court's own initiative, "for any of the reasons for which new trials

have heretofore been granted". Fed. R.Civ.P. 59(a). The decision whether to grant a motion for a new trial lies within the discretion of the trial court. *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 190–91, 66 L.Ed.2d 193 (1980). If the jury's verdict is against the demonstrable weight of the credible evidence or results in a blatant miscarriage of justice, the court may order a new trial. *Sánchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 717 (1st Cir.1994) (citing *Coffran v. Hitchcock Clinic, Inc.*, 683 F.2d 5, 6 (1st Cir.), *cert. denied*, 459 U.S. 1087, 103 S.Ct. 571, 74 L.Ed.2d 933 (1982)). However, trial courts shall exercise their discretion in favor of granting a new trial sparingly since "a jury's verdict on the facts should only be overturned in the most compelling circumstances." *Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors*, 850 F.2d 803, 811 (1st Cir.) *cert. denied*, 488 U.S. 955, 109 S.Ct. 392, 102 L.Ed.2d 381 (1988).

■ Even if the trial court could have reached a verdict opposite from the jury, the court shall not upset a jury verdict which is based on the evidence presented at trial. *Velázquez v. Figueroa–Gómez*, 996 F.2d 425, 428 (1st Cir.), *cert. denied* — U.S. ——, 114 S.Ct. 553, 126 L.Ed.2d 454 (1993). A trial court shall only order a new trial when the verdict is contrary to the substantial weight of the evidence, and allowing the verdict to stand would result in the miscarriage of justice. *Conway v. Electro Switch Corp.*, 825 F.2d 593, 598–99 (1st Cir.1987).

■ Taber incorporates the arguments presented in its renewed motion for judgment as a matter of law into its arguments for a new trial. Thus, Taber asserts that the jury verdict is unreasonable because the jury credited Víctor Torres' approval of Merit's certifications for payment, yet at the same time, the jury did not credit Víctor Torres' approval of Taber's proposed deductive change orders. Taber contends that this inconsistency renders the jury verdict contrary to the weight of the evidence.

Víctor Torres was involved in ruling on three separate sets of documents presented to him by both Taber and Merit. First, Merit would submit "certifications for pay-

ment" to VTA. After inspecting the construction site to determine that Merit had completed the work as alleged, and had generally complied with the standards and specifications, VTA would approve the certifications for payment and send them to Taber. Second, Merit could submit a "change order" or a "pending change order" to VTA, requesting additional compensation for additional work, not covered in the contract price. Third, Taber could request a reduction in the contract price by submitting a "deductive change order" to VTA. VTA would review these requests and either approve or disapprove them.

Taber had refused to pay Merit Certifications for Payment Numbers 17 and 18 under the Tower Contract, Certifications for Payment Numbers 7 and 8 under the Specialty Contract, requests for payment under the Cost Plus Contract, retainage under those contracts and other pending change orders and retainages, because it asserted that the amount that it owed Merit was less than the amount that Merit owed Taber in damages for defective work. In the case at bar, the jury found that Merit's performance was neither defective nor late, thus had not breached contracts; and in addition that Taber had breached the contracts by failing to pay Merit what was owed. This verdict reflects that the jury entirely believed Merit's version of the facts, and entirely disbelieved Taber's version.

Taber, in essence, contends that the jury's verdict is inconsistent since the jury accepted the testimony of Víctor Torres regarding his approval of all certifications for payment and change orders in favor of Merit, yet disregarded his testimony to the effect that VTA had approved the deductive change orders in favor of Taber. Moreover, Taber asserts, the jury totally disregarded all other evidence which showed that Merit's performance was both defective and late. Finally, Taber argues that the deductive change orders approved by VTA were binding on the parties, and thus, the Court erred in failing to instruct the jury equally concerning VTA's approval of the deductive change orders and approval of the certificates of payment.

None of Taber's arguments have merit. First, Taber did not dispute that Merit performed certain work, and VTA approved the certifications for payment. At issue was whether Merit's performance was defective and late. And if so, whether Taber was entitled to damages. Taber consistently argued that it was entitled to damages in an amount greater than the amount that Taber owed Merit, and consequently did not owe any amount to Merit. The jury, however, decided that Merit did not breach the contracts at all, but that Taber had breached by its failure to pay.

Second, there was evidence to support both sides' version of the facts. It is well settled that "when there are two permissible views of the evidence the factfinder's choice between them cannot be clearly erroneous." *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1138 (1st Cir.1995) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). A summary of Taber's evidence that the performance was late and defective is as follows: testimony from Víctor Torres, who had already determined that Merit's performance was both late and defective; testimony of Randy Redman, the correcting contractor, who testified about the condition of the rooms before they were corrected; testimony of Eldon Tipping, who inspected the building, and who testified that in his expert opinion the construction did not comply with standards, specifications or tolerances; testimony of Linda Romano, who went through the hotel and performed a room survey, detailing defects; and testimony of Eugene Romano about lateness and defects.

Defendants cross-examined these witnesses and presented their own witnesses to contradict plaintiffs' version of the facts. In particular, during cross-examination, Linda Romano admitted that several of the deductive change orders submitted to VTA, and which formed the basis for Taber's claim for damages, were inaccurate and should be removed from the jury's consideration. In addition, Emiliano Ruiz, defendant's expert witness, testified that Mr. Tipping's survey was not valid because the measurements upon which he had relied had not been taken

during the required twenty-four hour period. Moreover, defendants provided the testimony that the work was within the tolerances, any work which was pointed out to Merit as defective was corrected and brought into compliance with the standards and specifications of the contracts.

■ VTA's approval of the deductive change orders did constitute evidence that the work as performed by Merit was both late and defective. Taber asserts that Víctor Torres' decision and testimony must be given great weight. However, the jury shall judge how much weight should be given to any particular witness and the credibility of each witness. It is the jurors who are the ultimate triers of fact, thus, the trial court shall be especially reluctant to order a new trial when the verdict rested upon the jury's determination of the credibility of witnesses. *Ríos v. Empresas Líneas Marítimas Argentinas*, 575 F.2d 986, 990 (1st Cir.1978). The jury chose to credit a portion of Víctor Torres' testimony and the actions of VTA, and chose to discredit another portion. They could have chosen to as is within the province of the jury. However, "[t]he mere fact that a contrary verdict may have been equally—or even more easily—supportable furnishes no cognizable ground for granting a new trial." *Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1333–34 (1st Cir.1988).

As a final consideration, the Court notes that the contracts governing the parties' relationship in the case at bar provide that their differences shall be submitted to arbitration and decided by a neutral arbitrator. The parties had in fact first submitted the case to arbitration. Nevertheless, Taber filed this complaint in federal district court, and Merit waived its right to compel arbitration, and thus the parties agreed to have their differences resolved by a jury. One of the peculiarities of the jury system is that each case involves a risk about what the jury will believe and decide. However, once the verdict has been reached, that decision must be respected.

In the case at bar, a jury sat through fourteen and a half weeks of tedious testimony and cross-examination about the intricate dealings of several parties over a long span of time, who had entered into numerous and complicated contractual relationships. After the parties had finished presenting all their evidence, the jury dedicated days to its deliberations before it reached a verdict. This verdict, finding that Merit was not liable for any breach of contract, but that Taber had breached its contractual obligations, is based on the evidence as presented, and therefore, must be upheld.

As an additional argument, plaintiffs assert that this Court committed prejudicial error in precluding plaintiffs from providing the testimony of three announced witnesses: Claude Feninger, John Nicolo and/or Architect Miró–Montilla. Claude Feninger was an expert witness who plaintiffs proposed to call in order to testify about the cost of the repair and maintenance to the defective construction. As previously discussed, during the Pretrial Conference, the Court disallowed plaintiffs' evidence regarding extra expenditures incurred in maintaining a defectively constructed hotel. Therefore, this proposed witness would have testified about issues which had already been disallowed by the Court.

■ Prior to trial, Taber moved to amend their witness list in order to add John Nicolo and Antonio Miró–Montilla as expert witnesses. The first individual was a proposed expert witness who would have testified as to the diminished value of the hotel based upon the alleged defective and non-conforming concrete, and the second individual was an architect who had prepared a report regarding the quality of the work. The Court denied this request finding that their request was late, too close to trial to allow defendants to prepare adequately, and that these experts would merely add to the testimony of other announced expert witness. *See* Further Pretrial Conference Order (docket No. 313). Mr. Eldon Tipping, plaintiffs' expert witness for valuation of damages testified as to the reduction in contract price due to the loss in market value of the hotel.

Therefore, the Court ruled to deny Taber's motions to call these individuals because plaintiffs had failed to lay the necessary foundation to justify the testimony, the prof-

fered testimony related to claims which the Court had previously disallowed, or the proffered testimony related to duplicative theories of recovery which were not foreseeable by Merit, or finally because the testimony would have been duplicative of testimony already presented to the jury. These rulings did not constitute prejudicial error, and Taber is not entitled to a new trial.

## VI. *REMITTITUR*

■ Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, a party may request that the court alter or amend the judgment and to set aside a jury verdict. The standard for remittitur requires that "a damage award must endure unless it is 'grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand.'" *Correa v. Hospital San Francisco,* 69 F.3d 1184, 1196 (1st Cir.1995) (citing *Segal v. Gilbert Color Sys., Inc.,* 746 F.2d 78, 81 (1st Cir.1984), quoting *Grunenthal v. Long Island R.R. Co.,* 393 U.S. 156, 159 & n. 4, 89 S.Ct. 331, 333 & n. 4, 21 L.Ed.2d 309 (1968); internal quotation marks omitted)).

■ Taber objected to the jury instructions and the form of the jury verdict, asserting that the setoff should have been permissible, rather than mandatory.

"Your honor, in fact what we're saying is that the number that's there the jury may decide is not accurate. They may look at the same Merit exhibit I that I have looked at that's entitled unpaid cost-plus contract billings, they may look at No. 74 and 75, evidence introduced by Merit, see that its 17,00 and 5,113, which is for insurance and bond, and they may conclude, as I've concluded, that there is no bond on that contract, and yet there's money included in this 1.176 million. And there may be others as well." Transcript of August 22, 1995 at 72.

However, the jury verdict clearly demonstrates that the jury believed Merit's version of the case entirely, concerning both the issues of liability and the amount of damages. The amount of the jury's award in the case at bar is based upon a sound evidentiary predicate, therefore, it shall remain undisturbed.

The jury found that Merit had not in fact breached any of its contractual obligations, and thereby determined that Merit's performance was neither defective nor late. On the other hand, the jury found that Taber had breached its contractual obligations by failing to pay Merit for the work performed.

The jury verdict in the case at bar is not excessive. The jury awarded Merit all the damages that Merit requested, representing the total amount of the certifications for payment under the Tower and Specialty Contracts, the unpaid billings under the Cost Plus Contract, the retainage, and the unpaid change orders, and the total amounts claimed under the pending change orders and the chase claim. The Court finds that this verdict flows from the evidence adduced at trial, *Ruiz v. González Caraballo,* 929 F.2d 31, 35 (1st Cir.1991). Therefore, the amount of damages awarded by the jury shall not be remitted.

## VII. *MOTION TO AMEND THE JUDGMENT—RULE 59(e)*

Taber asserts that the Court's inclusion of prejudgment interest in the amount of the jury award was prejudicial error. According to Taber, the contracts provide that interest shall accrue on any amounts for payment "which became due", yet were not paid on time as dictated by the contractual provisions. Taber argues that the date on which the certificates of payment, and retainage became due was on the date of the jury verdict, not on the dates on which they were approved by VTA. As support for this contention, Taber asserts that the Interim Agreement modified the obligations of the parties by creating conditions precedent to Merit's receipt of payment. Taber contends that Merit failed to comply with the conditions precedent, therefore, Taber's obligation to pay never arose. More specifically, Taber asserts that before it was required to pay, the question of whether Merit's performance was defective and late had to be resolved. Taber's claims were not resolved until the jury reached a final verdict in this case, therefore, Taber's obligation to pay Merit did not arise until the date of the jury verdict.

 As an additional portion of its argument, Taber argues that this Court must assess the amounts of interest which accrued since the date that VTA approved the deductive change orders, and include that amount in the final judgment. As final contentions, Taber asserts that the rates of interest applied were incorrect according to the contractual provisions.

Taber's arguments are meritless. First, in a pre-verdict stipulation, the parties agreed that the Court would add appropriate interest, as a matter of law, to the amount determined by the jury and embodied in the verdict. Prior to the order stating the amount of interest as calculated, Taber never presented any of these arguments to the Court prior to the Court's entry of judgment. In fact, Taber's motion, mistakenly claims that the Court could not enter prejudgment interest based upon temerity, when it was clear that the basis for interest arose from the parties agreement embodied in the contract, and not by Puerto Rico statute. Therefore, Merit has waived its right to contend the addition of interest on the jury's verdict in the amount of the final judgment.

Second, the Interim Agreement did not erase Taber's contractual obligation to compensate Merit for the work it performed. Article 1.1.2 of the General Conditions required that any modification of the parties obligations required a signed written agreement to the effect that the obligations were being modified. The Interim Agreement does not expressly modify the contractual provision relating to the imposition of interest on any amounts due and not paid in accordance with the contracts.

The jury determined that Taber had breached its contractual obligations by failing to pay Merit the amounts owed. Moreover, the jury verdict clearly reflects that the jury determined that Taber was not entitled to any payment for its claimed deductive change orders because Merit's performance was neither late nor defective. Therefore, Taber's request for judgment as a matter of law in the amount of deductive change orders, asserting that Merit's performance was late and defective, is contrary to the jury's verdict. And Taber's request for inclusion of interest accrued on the deductive change orders in the final judgment is preposterous.

## VIII. CONCLUSION

First, Taber's renewed motion for judgment as a matter of law is procedurally defective. Second, the jury verdict was not contrary to the substantial weight of the evidence. Third, the inclusion of interest for the deductive change orders is meritless. Therefore, Taber's motion for judgment as a matter of law, new trial, and amendment of judgment is hereby DENIED.

IT IS SO ORDERED.