Maria E. **GOMEZ CANDELARIA,** et al., **Plaintiffs**

v.

Jose A. **RIVERA RODRIGUEZ, the Municipality of Gurabo and Luz E. Rivera Oyola, Defendants**

No. CIV. 01–1391(JP).

United States District Court, D. Puerto Rico.

June 27, 2002.

Pablo Landrau–Pirazzi, Ivan M. Castro–Ortiz, Hato Rey, PR, Eliezer Aldarondo–Ortiz, Claudio Aliff–Ortiz, Aldarondo & Lopez Bras, Hato Rey, PR, for Maria E. Gomez–Candelaria, Abraham Vazquez–Martinez, Claribel Rodriguez–Molina, Rafael Coss–Orellana, Grisel I. Calderin–Laboy, Olga Marin–Gonzalez, Edna G. Rivera–Medina, Raquel Barbosa–Cortes, Debby Soto–Viera, Santos Roman–Rodriguez, Jose L. Cadiz–Picart, Jose L. Cortes–Morales, Luis E. Ortiz–Delgado, Zenaida Perez–Vega, Magaly Betancourt–Viera, Mariel Adorno–Santiago, Maria V. Amadeo–Huertas, Ines Hernandez–Barbosa, Brenda L. Alamo–Sanchez, Carlos J. Hidalgo, Angel Luis Arroyo–Guzman, Abraham Carrasquillo–Rodriguez, Rafael Nazario–Rodriguez, Jackeline Delgado–Burgos, Shirley M. Morales–Rivera.

Luz Minerva Ramos–Guevara, Jose A. Santiago–Rivera, Commonwealth Department of Justice, Federal Litigation Division, San Juan, P.R., Ismael Rodriguez–Izquierdo, Santurce, P.R., for Jose A. Rivera–Rodriguez, Luz E. Rivera–Oyola.

Ismael Rodriguez–Izquierdo, Santurce, P.R., for Municipality of Gurabo.

Jorge Martinez–Luciano, Law Offices of Pedro Oritz Alvarez, P.S.C., Ponce, P.R., for Victor Rivera–Hernanez, Luis Pinot–Areco.

## OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT UNDER RULE 50(b) AND FOR A NEW TRIAL

PIERAS, Senior District Judge.

"It wasn't worth anything to be a good employee if when the time came what they did was pick flags, at the time of choosing."

("De nada valió uno haber sido un buen empleado, si a la hora de la verdad lo que se escogieron fueron las banderas.")

— Plaintiff Debby Soto Viera's direct examination testimony on the stand, from trial of *María Gómez Candelaria v. Rivera Rodríguez*, 01–1391(JP), March 15, 2002, at 11:50 a.m.

These are spontaneous "words of wisdom", ("palabras con luz") that were accepted as true by a jury of her own peers when they entered a verdict for her and against her employer, the Municipality of Gurabo, and awarded her damages for her unconstitutional dismissal on account of her political affiliation to the New Progressive Party ("NPP"). These are impressive although sad conclusions made by a woman who earned a meager $836.88 per month (below the poverty line). In Roman times, as chronicled by Shakespeare, the Victor slaughtered the vanquished.[1] Two thousand years later, on the Island of Enchantment ("La Isla del Encanto") we have improved very little; the Victor starves to death the vanquished.

---

1. Interpretation given by Professor John E. Alvis of the University of Dallas English Department, as part of a lecture presented at the George Mason University School of Law & Economics Center during the March 21 to March 24, 2002 Seminar entitled *Shakespeare on Liberty—the Roman Plays for Judges*. Professor Alvis made this interpretation after reflecting upon the events following Julius Caesar's murder, in particular the slaughter of one hundred senators from Brutus' party upon his defeat by Marc Antony.

In this case, Debby Soto Viera successfully claimed her rights under the First Amendment of the Constitution of our nation, the United States of America, and exercised her right to free speech. This is fitting because our nation has consecrated itself before history forever as the home of the free, which holds as paramount the freedom and rights of the individual. Because of our nation's egalitarian ideals, "discrimination in any form is the most dehumanizing experience that anybody could ever have." [2]

In the time-frame following the general elections in January of 2000, there have been no less than 42 political discrimination and dismissal cases filed against municipalities in the District Court for the District of Puerto Rico, comprising a total number of 975 Plaintiffs. The undersigned himself has 15 of these cases, comprising a total number of four hundred twenty seven plaintiffs who have alleged that their employment was adversely affected on account of political discrimination.

## I. *INTRODUCTION AND BACKGROUND*

The Court has before it individual capacity co-Defendants José A. Rivera Rodríguez and Luz E. Rivera Oyola's "Motion for Judgment as a Matter of Law Rule 50(b) and for New Trial Rule 59" (**docket No. 174**); and Plaintiffs' Opposition thereto (docket No. 180). Official capacity co-Defendants and the Municipality of Gurabo have not moved for judgment notwithstanding the verdict or for new trial.

Plaintiffs, all 24 of whom are New Progressive Party ("NPP") members, were employed by the Municipality of Gurabo in jobs funded through the Employment Opportunities Development Fund created by Section 2 of Act 52 of August 9, 1991, 29 P.R. Laws Ann. § 711c, ("Law 52"). Plaintiffs assert that after Popular Democratic Party ("PDP") member José A. Rivera Rodríguez ("Rivera") was elected Mayor of Gurabo for a four-year term starting in January of 2001, he and the Municipality of Gurabo's Human Resources Director Luz E. Rivera Oyola ("Rivera–Oyola"), politically discriminated against them by declining to renew their Law 52 contracts, even though Law 52 funds were approved and available. They claim that Mayor José A. Rivera Rodríguez and his current administration hired people affiliated with the PDP to fill Plaintiffs' former positions and/or perform their former functions. Plaintiffs brought this action under the First Amendment of the United States Constitution and 42 U.S.C. § 1983.

On January 22, 2002, Defendants filed a motion for summary judgment and requested that the Court find that they were entitled to qualified immunity. On February 25, 2002, the Court issued an extensive Opinion and Order denying Defendants' Motion for Summary Judgment, and denying Defendants' motions for qualified immunity.

On March 4, 2002, the Court commenced the jury trial to hear the political discrimination claims of Plaintiffs María E. Gómez Candelaria; Abraham Vázquez Martínez; Claribel Rodríguez Molina; Abraham Carrasquillo Rodríguez; Rafael Coss Orellana; Grisel I. Calderín Laboy; Olga Marín González; Edna G. Rivera Medina; Raquel Barbosa Cortés; Debby Soto Viera; Santos Román Rodríguez; José L. Cádiz Picart; José L. Cortés Morales; Luis E. Ortiz Delgado; Zenaida Pérez Vega; Mar-

---

**2.** Sentiments expressed by the Hon. Robert R. Mehrige, Jr., who sat on the District Court for the Eastern District of Virginia, and whose career as a jurist has been distinguished by his dedication to preserving and protecting civil rights. *See* Bill Lohmann, *The Face of Justice,* University of Richmond Magazine, Fall 1998 at 11.

iel Adorno Santiago; María V. Amadeo Huertas; Inés Hernández Barbosa; Brenda L. Alamo Sánchez; Carlos J. Hidalgo; Angel Luis Arroyo Guzmán; Rafael Nazario Rodríguez; Jackeline Delgado Burgos; and Shirley M. Morales Rivera. On April 2, 2002, the Jury returned a verdict against Defendants and in favor of all Plaintiffs. In its verdict, the Jury determined that political affiliation was a substantial or a motivating factor in the decision not to renew this Plaintiffs' Law 52 contracts or not to call Plaintiffs back after new Law 52 funds became approved and available for use by the Municipality of Gurabo; that Plaintiffs were discharged from their Law 52 positions with the Municipality of Gurabo on account of their political affiliation and that other individuals affiliated or identified with the rival political party were employed under Law 52 to perform Plaintiffs' duties under different titles. In total, the aforementioned 24 Plaintiffs were awarded One Million One Hundred Forty Thousand Fifty Dollars ($1,140,050.00) in compensatory damages and punitive damages combined. To be more specific, the Jury awarded Plaintiffs a total of $344,250.00 in damages for loss of earnings against the Municipality of Gurabo and a total of $731,000.00 in damages for pain and suffering against the Municipality of Gurabo. The Court awarded a total of $24.00 in nominal damages to Plaintiffs against the Mayor Rivera and a total of $24.00 in nominal damages against Human Resources Director Rivera Oyola. Further, the Jury awarded Plaintiffs a total of $60,976.00 in punitive damages against Mayor Rivera; and awarded Plaintiffs a total of $3,776.00 in punitive damages against Human Resources Director Rivera Oyola. For further reference, see docket Nos. 134 to 157 which are the verdict forms and docket No. 167 which is the Judgment.

On April 11, 2002, the Court denied Defendants' motion for qualified immunity and dismissed that defense as a matter of law. On April 12, 2002, the Court granted Plaintiffs' motion for the reinstatement of Plaintiffs to their Law 52 positions, and entered Judgment on the Jury Verdict, qualified immunity, and reinstatement. By Order dated May 15, 2002, the Court awarded Plaintiffs Two Hundred Sixty Three Thousand Nine Hundred Ninety Eight Dollars and Twenty Five Cents ($263,998.25) in attorneys' fees, plus interests as of the date of judgment, and further held that the Clerk of Court shall tax costs as it deems appropriate.

Individual-capacity Defendants now move for judgment as a matter of law, or in the alternative, for a new trial. For the reasons set forth herein, Defendants' motion (**docket No. 174**) is hereby **DENIED**.

## II. *LEGAL STANDARDS FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL*

After reviewing Defendants' motion, the Court has been able to piece together the following. Individual-capacity Defendants move for (A) judgment as a matter of law and (B) a new trial pursuant to Rule 50(b) and Rule 59 of the Federal Rules of Civil Procedure, alleging that 1) Plaintiffs did not prove that Luz Oyola was personally involved in the decision not to renew Plaintiffs Law 52 contracts or not to call them back to work; and 2) the Court erred in granting Plaintiffs' motion in limine to preclude the expert testimony of Luis Piñot, 3) the Court erred in denying the motion to reconsider the motion in limine, and 4) the Court erred in denying Defendants' motion to "offer proof" concerning the motion in limine in open court. Further Defendants contend that 5) the Court erred in admitting hearsay testimony of the Mayor's wife concerning the Mayor's intent to hire employees based on their political affiliation, and 6) the Court erred in

admitting so-called hearsay testimony related to the political affiliation of the newly hired Law 52 employees, and of Defendants' knowledge of Plaintiffs' political affiliation.

The standard for granting a judgment notwithstanding the verdict made pursuant to Rule 50 is identical to the standard for a directed verdict, since it is technically just a renewal of a motion for directed verdict made at the close of all evidence. *Van Blargan v. Williams Hospitality Corp.*, 759 F.Supp. 940, 941 (D.Puerto Rico 1991) (Pieras, J.). Accordingly, it can be granted only if a motion for directed verdict should have been granted. *Id.* Rule 50 provides in pertinent part:

> If during a trial by jury a party has been fully heard on a issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue. Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

Fed.R.Civ.P. 50(a).

█ The trial court's freedom to overturn a jury verdict and enter a judgment as a matter of law is severely circumscribed, and "[a] court is without authority to set aside a jury verdict and direct entry of a contrary verdict unless the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." *Keisling v. SER-Jobs for Progress*, 19 F.3d 755, 759–60 (1st Cir.1994); *see also, PH Group Ltd. v.*

*Birch*, 985 F.2d 649, 653 (1st Cir.1993); *Conway v. Electro Switch Corp.*, 825 F.2d 593, 598 (1st Cir.1987). When ruling upon a motion for judgment notwithstanding the verdict, the trial judge may not evaluate the credibility of the witnesses, the weight of the evidence, or attempt to resolve conflicting testimony, because credibility questions are within the exclusive province of the jury. *Conway*, 825 F.2d at 598. *Rios v. Empresas Lineas Maritimas Argentinas*, 575 F.2d 986, 990 (1st Cir.1978). The judge must view the evidence in the light most favorable to the non-movant and grant that party every reasonable inference that the jury might have found in its favor. *Keisling*, 19 F.3d at 759–60; *Davet v. Maccarone*, 973 F.2d 22, 28 (1st Cir. 1992); *Wildman v. Lerner Stores Corp.*, 771 F.2d 605, 607 (1st Cir.1985). He may not set aside a verdict merely because he disagrees with it or because he could have come to a different conclusion. *Van Blargan*, 759 F.Supp. at 942, (*citing Tennant v. Peoria & Pekin Union Ry. Co.*, 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944), *reh'g denied*, 321 U.S. 802, 64 S.Ct. 610, 88 L.Ed. 1089 (1944)). He is required to restrict his analysis to only consider the legal question of whether there is sufficient evidence to raise a jury issue. In this way, it is more stringent than the standard employed when evaluating a motion for a new trial. *Id.*

█ By contrast, when evaluating a motion for a new trial pursuant to Rule 59, the Court may weigh the evidence for itself and consider the credibility of witnesses. *Id.* at 943. However, the Court does not enjoy unbridled freedom to grant new trials, because a jury verdict may only be overturned in the most "compelling of circumstances". *See Wells Real Estate Inc. v. Greater Lowell Bd. of Realtors*, 850 F.2d 803, 811 (1st Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 392, 102 L.Ed.2d 381

(1988). As this Circuit has stated, "the trial judge must give due deference to the jury's constitutionally sanctioned role as finder of fact." *Raymond v. Raymond Corp.*, 938 F.2d 1518, 1521–1522 (1st Cir. 1991).

Just as with a judgment notwithstanding the verdict, a trial judge may not upset the jury's verdict simply because he might have produced a different outcome had the facts been pled before him. *Velázquez v. Figueroa–Gómez*, 996 F.2d 425 (1st Cir.), *cert. denied* 510 U.S. 993, 114 S.Ct. 553, 126 L.Ed.2d 454 (1993); *Taber Partners I v. Merit Builders, Inc.*, 917 F.Supp. 112, 116 (D.Puerto Rico 1996) (Pieras, J.). So impermeable is a jury's verdict on the merits that a trial judge may only disturb it on the rarest of occasions when it is clear that no reasonable jury could have found for the verdict winner on the evidence provided. The First Circuit Court of Appeals has stated thus:

> In the federal system, a trial judge cannot displace a jury's verdict merely because he disagrees with it or would have found otherwise in a bench trial. Absent error of law … the judge's prerogative to set aside the jury verdict crystallizes only if it is quite clear that the jury has reached a seriously erroneous result. In our litany of cases, we have come to refer to this criterion as the manifest miscarriage of justice standard.

*Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1333 (1st Cir.1988); *see also Sánchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 717 (1st Cir.1994) (A new trial may be granted only if the evidence is "grotesquely lopsided" in favor of the movant, and if it is obvious that the jury verdict, if allowed to stand, would result in a blatant miscarriage of justice).

With these restrictive standards in mind, the Court now addresses Defendants' arguments.

## III. ANALYSIS

### A. JUDGMENT NOTWITHSTANDING THE VERDICT

Defendants contend that based on the evidence presented by Plaintiffs at trial, no reasonable person could have found that co-Defendants Luz Rivera Oyola politically discriminated against Plaintiffs. Specifically, Defendants point to Stipulation No. 19 of Joint Exhibit I to argue that as a matter of law, this Court should have dismissed the case against Luz Rivera Oyola for lack of personal involvement. Stipulated Fact No. 19 states:

> While executing or implementing the Mayor's order to not renew Plaintiffs' contracts, Defendant Rivera–Oyola was strictly following orders, she had no participation in the actual official decision and determination not to renew Plaintiffs' contracts.

The Court is not permitted to weigh the evidence, and may only evaluate whether Plaintiffs provided evidence that could support their respective allegations. After considering the Defendants arguments,[3] the Court adheres to the view that it expressed at trial when it denied Defendants' motion for a direct verdict. *See María Gómez Candelaria v. Rivera Rodríguez*, 01–1391(JP), Opinion and Order on Rule 50, docket No. 123, March 20, 2002 (finding that evidence, specifically conflicting evidence in the facts stipulated to by the parties, reflected that there was a triable issue of fact for the jury).

When deciding the above, the Court took into consideration as it takes into

---

**3.** Defendants failed to provide direct citations to the trial transcript in support of their arguments. Therefore, in reviewing this motion, the undersigned has relied on his own recollections and trial notes.

consideration now that in addition to Stipulated Fact No. 19, evidence was also presented in the form of Stipulated Facts Nos. 22 and 23 (also found in Joint Exhibit I), which pointed to the fact that Luz Rivera Oyola did play an integral part in the decision not to renew Plaintiffs' Law 52 contracts. Stipulated Fact Nos. 22 ad 23 specifically state:

> Defendant Luz E. Rivera Oyola drafted the Law 52 employees' termination letters.
> Defendants Luz E. Rivera Oyola and Mayor José A. Rivera Rodríguez discussed Plaintiffs' employment together.

At the time that the Court denied Defendants' Rule 50 motion, the Court believed then, and holds the firm belief now, that these stipulated facts are competing statements. Fact Number 19 posits that Rivera–Oyola was not involved in the official decision not to renew Plaintiffs Law 52 contracts whatsoever. However, Fact Numbers 22 and 23 posit that she was involved in the decision by specifically drafting the termination letters and by discussing Plaintiffs' employment with the Mayor. As the Court previously reasoned, Stipulated Fact Number 23 also re-affirms that her job as Director of Human Resources at the Municipality of Gurabo requires that she share her opinions with the Mayor and "intervene or collaborate substantially in the formulation of public policy." 3 P.R. Laws Ann. § 1350 (Supp. 1998).

█ The Court **REAFFIRMS** herein its view that Stipulation No. 19 and Stipulations Nos. 22 and 23 are competing evidentiary statements, the resolution of which is properly left to the finder of fact. The finder of fact did resolve this issue based on the evidence presented in this case.

In addition, the crux of this case is political discrimination. All Plaintiffs testified that they were members of the New Progressive Party. Evidence was submitted that the atmosphere within the Municipality of Gurabo was highly political, and that the political affiliation of employees within the Municipality of Gurabo was known to co-Defendant Luz Rivera–Oyola. Plaintiffs testified that they were politically active in the election directly preceding the change in administration and did not support the Defendants' party. Further, they presented evidence that their Law 52 contracts were not renewed. They also presented evidence that out of the 42 newly appointed Law 52 employees, 35 Popular Democratic Party affiliates were employed by the Municipality in their stead. In addition to the 35 new Law 52 employees whom they have identified as being PDP affiliates, Plaintiffs have produced evidence that one Law 52 employee (Juan Concepción) was an NPP but voted for PDP Mayor Rivera–Rodríguez, one new Law 52 employee (Israel Suárez Ramos) was appointed as a result of the political backing of PDP activist Alexis Peña. Based on the foregoing, the Court **FINDS** that Plaintiffs presented legally sufficient evidence for a jury to rightfully conclude that Plaintiffs were the victims of political discrimination at the Municipality of Gurabo, and that Luz Rivera–Oyola participated in said political discrimination.

## B. NEW TRIAL

Individual-capacity Defendants move for a new trial by contending that 1) the Court erred in granting Plaintiffs' motion in limine to preclude the expert testimony of Luis Piñot, 2) the Court erred in denying the motion to reconsider the motion in limine, 3) the Court erred in denying Defendants' motion to "offer proof" concerning the motion in limine in open court; 4) the Court erred in admitting hearsay testimony of the Mayor's wife concerning the Mayor's intent to hire employees based on their political affiliation, and 5) the Court erred in admitting so-called hearsay testi-

mony related to the political affiliation of the newly hired Law 52 employees, and of Defendants' knowledge of Plaintiffs' political affiliation. Reasons number 1, number 2, and number 3 all deal with Luis Piñot's testimony and will therefore be discussed together. Reasons number 4 and 5 deal with separate matters and will therefore be discussed separately. For the reasons that follow, individual capacity Defendants' motion for new trial is hereby **DENIED**.

As previously stated herein, when evaluating a motion for new trial, the court may weigh the evidence, and may overturn a jury verdict only under the rare circumstance that the verdict was so blatantly against the weight of the evidence that to uphold it would result in a miscarriage of justice. *Sánchez v. Puerto Rico Oil Co.*, 37 F.3d at 717. In their motion for new trial, individual capacity Defendants have not challenged the weight of the evidence at trial. Instead they have challenged the admissibility of the evidence itself. The Court **NOTES** that while Defendants move for new trial on the afore-stated issues, they fail to explain or discuss how any of these issues warrant the granting of a new trial. While this Court has already addressed all of these issues before, for the sake of clarity and the record, it shall now re-entertain the same.

■ The challenge to the Court's decision not to allow the testimony of Luis Piñot has been argued in open court by counsel for Defendants, who opted not to submit a brief on the matter. The Court excluded Piñot's testimony on two independent grounds. First his testimony is akin to that of an expert, and Defendants were required to notify and announce him and file a report by him which details the nature of his expert testimony pursuant to Fed.R.Civ.P. 26 and this Court's Initial Scheduling Conference Order. Since Defendants failed to comply with both the Rule 26 and the Court's ISC Order for

announcing expert witnesses, Luis Piñot was not allowed to testify. Further, had Piñot testified, he would have provided opinion testimony regarding his legal interpretation of Law 52. This is impermissible because no witness is allowed to interpret the law for the jury. The only interpreter of the law is the Judge. The First Circuit has spoken directly to this issue in the case of *Nieves–Villanueva v. Soto–Rivera* where it stated thus regarding the admissibility of experts who provide opinions on the law to the jury:

> It is black letter law that 'it is not for witnesses to instruct the jury as to applicable principles of law, but for the judge.' In our legal system, purely legal questions and instructions to the jury on the law to be applied to the resolution of the dispute before them is exclusively the domain of the judge. Accordingly expert testimony on such purely legal issues is rarely admissible. As the Second Circuit has noted, "The danger is that the jury may think that the 'expert' in the particular branch of the law knows more than the judge—surely an impermissible inference in our system of law." *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 512 (2nd Cir.1977).

*Nieves–Villanueva v. Soto–Rivera*, 133 F.3d 92, 99 (1st Cir.1997).

Allowing Piñot to offer such expert testimony on Law 52 would have proven to be judicially unmanageable because his opinion testimony would not be able to be extricated from a discussion on his opinion as to the law. The Court advised the parties of this fact during the trial. Further, any fact testimony that he may give would also be inextricably conjoined to expert testimony on the law. Therefore, after carefully considering the reasons why Piñot should not be allowed to testify, the Court precluded his testimony by Order dated March 27, 2002. Thereafter, the Court denied Defendants' motion for reconsideration.

The material fact that would have been brought in through Luis Piñot's testimony is that the Mayor sought and received his advice on the issue of whether it was legal to not employ Plaintiffs and to employ other employees in their stead. In this way, Defendants intended to show that they acted in good-faith. Even though the Court precluded Luis Piñot's testimony, it did allow Defendants to introduce this material fact and show evidence of good faith and the absence of political discrimination. The Court allowed Defendants to introduce evidence to the effect that the Mayor of Gurabo sought and received the advice of Luis Piñot, a Department of Labor official concerning whether the employment of the new employees and the non-employment of old employees was legal, and that once he was advised that such was proper, he proceeded to employ new employees under Law 52. This goes to Defendants defense of lack of political animus in their decision and conduct.

 The Court stands by its previous Order precluding the testimony of Piñot, and herein **RE–AFFIRMS** the same. The Court also finds Defendants' motion for new trial premised on the argument that the Court erred in admitting the testimony of the Mayor's wife to be ill-fated. The Court made its decision to admit the testimony of the Mayor's wife as that of a party admission after hearing repeated testimony that she occupied an office at the Municipality, and was conducting interviews of prospective employees on behalf of the Mayor. Based on the above stated reasons and common knowledge that wives of politicians often occupy positions of power and prestige within the government alongside their husbands, the Court concluded that under the circumstances of this particular case, and based on the testimony presented by the witnesses, Mayor Rivera's wife was in fact an extension of the Mayor, and did in fact hold a position within the Municipality of Gurabo that was akin to his alter ego.

Interestingly enough, while the Court did permit the statements of the Mayor's wife regarding the hiring process at the Municipality to come in, it was Defendants and not Plaintiffs who actually read said statements into the record while unsuccessfully attempting to impeach a witness. Defendants' motion for new trial on the basis of their argument that the Mayor's wife's statements should not have been admitted into evidence is hereby **DENIED**.

Defendants also claim that the Court admitted hearsay testimony to prove the political affiliation of the majority of the new municipal appointees to the Law 52 positions and to prove Defendants' knowledge of Plaintiffs' political affiliation. This is simply not the case. As can be seen from the record, Plaintiffs were only allowed to testify as to the facts that they knew by first hand knowledge. Further, since Defendants failed to cite to the record as support for this allegation, it is unsupported, speculative and conclusory. Accordingly, Defendants' motion for new trial based on the Court's admission of so-called hearsay testimony is hereby **DENIED**.

Recent experience in overseeing the trials of three political discrimination actions within the last year has indicated to this judge that these types of cases usually do not settle and therefore, must be tried.[4]

4. During the past seven months, the undersigned oversaw the following trials: 1) *Acevedo García v. Vera Monroig*, Civil No. 97–2639(JP), a case filed by 82 Plaintiffs against the Mayor of Adjuntas, the Personnel Director and Municipality of Adjuntas. Due to problems related to case management in this case, and the likelihood of jury confusion, the court severed the 82 Plaintiff trial into 4 separate trials consisting of approximately 20 plaintiffs

In closing, the undersigned heard the same evidence that the jury heard in this case. He also had the same opportunity to appraise the quality and credibility of each witness' testimony. In the undersigned's opinion, Plaintiffs presented a very strong and compelling case of political discrimination. An example of this is reflected through the words of Plaintiff Debby Soto Viera, who testified on March 15, 2002. Plaintiff Soto eloquently expressed the sentiments of the 24 Law 52 Plaintiffs, who according to the Jury, were turned away from their jobs at the Municipality of Gurabo for political reasons. The Court need go no further on this issue.

## IV. CONCLUSION

For the foregoing reasons, individual-capacity Defendants' Motion for Judgment As a Matter of Law under Rule 50(b) and for a New Trial under Rule 59 (**docket No. 174**) is hereby **DENIED**.

**IT IS SO ORDERED.**

each, the judgment of which would be final and appealable. To date, the Court has heard the cases of the first 20 Plaintiffs; 2) *Vázquez Valentín v. Santiago*, Civil No. 01–1788(JP), a case filed by one Plaintiff against the Mayor of Toa Baja, the Personnel Director and the Municipality of Toa Baja; and finally, the above-captioned case of *Gómez Candelaria v. Rivera Rodríguez*, Civil No. 01–1391(JP).