Nicolas ECHEVARRIA,
et al., Plaintiffs,

v.

Miguel RUIZ HERNANDEZ and
the Municipality of Aguada,
et al., Defendants

No. CIV. 01–2719JP.

United States District Court,
D. Puerto Rico.

April 5, 2005.

Eliezer Aldarondo–Ortiz, Esq., Aldarondo & López Bras, Guaynabo, for Plaintiff.

Francisco A. Ojeda–Diez, Esq., United States Attorney's Office, San Juan, Jorge

Martínez–Luciano, Esq., Pedro Ortiz Alvarez Law Offices, Ponce, Ivonne Palerm–Cruz, Esq., Commonwealth Department of Justice, Federal Litigation Division, San Juan, for Defendant.

### *OPINION AND ORDER*

PIERAS, Senior District Judge.

## I. INTRODUCTION AND BACKGROUND

The Court has before it Plaintiffs' "Motion for New Trial Under Fed.R.Civ.P. 59(a)" (**docket No. 243**) and Defendants' opposition thereto (docket No. 245).

This case is a political discrimination case brought by twelve Plaintiffs against the Municipality of Aguada, its Popular Democratic Party ("PDP") Mayor Miguel Ruiz Hernández, the Municipality's Director of Human Resources, Glenda Peña Muñoz, and its Public Works Director, Aníbal Mendoza[1]. Plaintiffs, who are all affiliated with the New Progressive Party ("NPP"), allege that Defendants took adverse employment actions against them based on their political affiliation. Among the Plaintiffs are two categories of municipal employees: seven (7) career employees and five (5) "Law 52" or transitory employees. All Plaintiffs' claims are primarily based on the First Amendment to the United States Constitution and 42 U.S.C. § 1983.

A Jury Trial was held from November 3, 2003 through January 28, 2004, wherein the Jury returned a verdict in favor of Defendants, the Municipality of Aguada, Miguel Ruiz Hernández, and Glenda Peña Muñoz. Plaintiffs now move for a new trial under Rule 59(a) of the Federal Rules of Civil Procedure, claiming that the clear weight of the evidence showed that Defendants' actions were taken on the basis of Plaintiffs' political affiliation. After examining the briefs before it and the evidence in the record, and for the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for a New Trial.

## II. LEGAL STANDARD

As is well known, when evaluating a motion for a new trial pursuant to Rule 59, the Court may weigh the evidence for itself and consider the credibility of witnesses. However, the Court does not enjoy unbridled freedom to grant new trials, because a jury verdict may only be overturned in the most "compelling of circumstances". *See Wells Real Estate Inc. v. Greater Lowell Bd. of Realtors*, 850 F.2d 803, 811 (1st Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 392, 102 L.Ed.2d 381 (1988). As this Circuit has stated, "the trial judge must give due deference to the jury's constitutionally sanctioned role as finder of fact." *Raymond v. Raymond Corp.*, 938 F.2d 1518, 1521–1522 (1st Cir.1991).

A trial judge may not upset the jury's verdict simply because he might have produced a different outcome had the facts been pled before him. *Velázquez v. Figueroa–Gómez*, 996 F.2d 425 (1st Cir.), *cert. denied*, 510 U.S. 993, 114 S.Ct. 553, 126 L.Ed.2d 454 (1993); *Taber Partners I v. Merit Builders, Inc.*, 917 F.Supp. 112, 116 (D.Puerto Rico 1996) (Pieras, J.). So impermeable is a jury's verdict on the merits that a trial judge may only disturb it on the rarest of occasions when it is clear that no reasonable jury could have found for the verdict winner on the evidence provided. The First Circuit Court of Appeals has stated thus:

> In the federal system, a trial judge cannot displace a jury's verdict merely because he disagrees with it or would have found otherwise in a bench trial. Absent error of law … the judge's prerogative to set aside the jury verdict

---

1. Mr. Mendoza was dismissed as a Defendant    at the Rule 50 stage.

crystallizes only if it is quite clear that the jury has reached a seriously erroneous result. In our litany of cases, we have come to refer to this criterion as the manifest miscarriage of justice standard.

■ *Freeman v. Package Mach. Co.,* 865 F.2d 1331, 1333 (1st Cir.1988); *see also Sánchez v. Puerto Rico Oil Co.,* 37 F.3d 712, 717 (1st Cir.1994) (A new trial may be granted only if the evidence is "grotesquely lopsided" in favor of the movant, and if it is obvious that the jury verdict, if allowed to stand, would result in a blatant miscarriage of justice). With these restrictive standards in mind, the Court now addresses Plaintiffs' arguments.

## III. ANALYSIS

### A. The Law 52 Plaintiffs

■ In their motion for a new trial, Plaintiffs begin with the claims of the Law 52 employees. Plaintiffs claim that the great weight of the evidence demonstrated that the substantial or motivating factor in Defendants decision to terminate the Law 52 employees was their affiliation with the NPP.

First, Plaintiffs place great weight on the fact that the Law 52 monies expired on December 31, 2000; that the law 52 employees were terminated thirty (30) days later, on January 31, 2001, for lack of monies, and that the new Law 52 contract was signed on February 12, 2000, twelve days after Plaintiffs' termination. In addition, Plaintiffs allege that some sort of guarantee was made to the Law 52 employees regarding reappointment after the election, and that almost all the Law 52 employees were not rehired. However, the Court finds that Plaintiffs' challenge does not meet the stringent standard for a new trial.

Defendants state that Plaintiffs' expectation of continued contract renewal was based on the illegal hiring practice of the prior administration. According to Defendants, the reasons why they did not rehire the Law 52 Plaintiffs were twofold: 1) that no Law 52 monies were available and 2) that they were advised by the Department of Labor that they had no obligation to call the Law 52 employees back to work.

Plaintiffs' main argument, the fact that law 52 monies were available merely days after Plaintiffs termination, does not automatically indicate discrimination. While automatic reappointment of Law 52 employees may have been the illegal practice of the former NPP Mayor, the Jury chose to disregard this fact and chose instead to credit the Mayor's efforts to spread the Law 52 monies across Aguada. The Mayor testified that due to this practice by the previous NPP administrations, all of the Law 52 employees before 2001 were NPP members, some having occupied those positions for some time. The new Mayor attempted to correct this situation, and when monies became available, chose to appoint new employees to the Law 52 ranks. This attempt to reach across Aguada to unemployed citizens was made clear when Co–Defendant Glenda Peña testified that even the February 2001 appointees were replaced by a new batch when their six-month term ended. This squarely fits with Law 52's limited and time-sensitive goals of training employees, as testified by Glenda Peña, so they can acquire some skills that will aid them later in their employment search. These appointments are not meant to be career positions, automatically renewable every year, as apparently understood by Plaintiffs.[2]

---

**2.** *See* Plaintiffs' *Motion for a New Trial* at 2, where they state they "These five (5) Plaintiffs presented abundant evident (sic) showing that

they had held Law 52 positions at the Municipality of Aguada for years when the new PDP

The Mayor also testified that the unemployment rate in Aguada was 21% in 2001 and that the situation was grim since some industries had been shut down. He further testified that some ten (10) employees were retained from the law 52 class[3] and three (3) more were placed through the Consortium of the North–East; that the personnel department was in complete disarray when he took office, with no documents to verify compliance with the law in the recruitment process, and further, that the personnel office was almost "created" when he came into office, since all personnel decisions were previously taken solely by the NPP Mayor. During his testimony, the Mayor also spoke regarding the steps taken to attempt to properly organize the recruitment process, including the filing of applications, the establishment of a registry of eligible employees and the interview and recommendation process. Therefore, the Court finds that there is ample evidence to sustain the Jury's verdict against Plaintiffs, and cannot find, on these facts, that the evidence in favor of Plaintiffs was "grotesquely lopsided" so as to warrant a new trial.

Plaintiffs further argue that since the Law 52 Plaintiffs' salaries for January of 2001 were paid by Municipal funds from the general budget, that this entitles them somehow to have their contracts renewed, as monies were available from the general fund for their salaries. Mrs. Glenda Peña testified that the Municipality received guidance regarding the Law 52 positions, and based on that guidance chose to terminate the positions. She further testified that a meeting was held wherein the Law 52 employees were told that since their proposal had expired, there was no funding to pay them, and they would be paid for the month of January 2001 from general budget. The Court sees no obligation from the Municipality to go out of its way to make funding available to a group of the municipal employees whose contacts had run out. The Municipality elected to pay the Law 52 employees' January 2001 salary from the general budget, which Mrs. Peña testified was apparently reorganized in order to defray this cost, and the Court cannot see any obligation on behalf of the Municipality to pay employees from a fund that is not earmarked for their services. Therefore, the Court sees no error in the fact that the Municipal government chose to pay the Law 52 salaries from this fund and refused to do so again, the same reasoning which the Jury chose to give credibility to.

The Jury chose to credit the Municipality's arguments for their actions, and it is not for the Court to reverse the verdict absent an absolute finding that the verdict was against the clear weight of the evidence or seriously erroneous. That is not the case here, where the Jury made a choice as to what arguments it would give more weight to and chose to credit Defendants' reasons for their actions. Based on the evidence presented, the Court cannot find that it was "quite clear" that the Jury's verdict was clearly erroneous.

Accordingly, the Court finds that the Jury's verdict was not against the clear weight of the evidence or seriously erroneous and **DENIES** Plaintiffs' motion for a new trial as to the Law 52 Plaintiffs.

## B.  The Career Plaintiffs

██  Plaintiffs allege that there was ample evidentiary basis for a reasonable jury to find that political discrimination was the

administration took office on January 9, 2001", as well as the testimony of Plaintiff Sonia Ruiz, who testified during her direct examination that some employees had been working under Law 52 proposals in Aguada for as many as six (6) years.

3.  Glenda Peña also testified as to this fact.

substantial or motivating factor behind Defendants' decision to declare null and void the appointments of seven career Plaintiffs. The Court disagrees.

Plaintiffs allege that since Defendants declared Plaintiffs' positions to be null, and since the remaining appointments at the Municipality [4] were appointed in the same fashion, that all Municipal·employees had to be dismissed. According to Plaintiffs, the Jury verdict as to the career employees was against the clear weight of the evidence, thus warranting a new trial.

Glenda Peña testified as to the reasons for the career dismissals: that the career job procedures, including the announcement procedures, the posting of notices, the setting up of a registry of eligible qualified candidates list, and interviews by the evaluating committee requirements, were not followed. The Mayor likewise testified as to the disastrous situation that the human resources office was in when he came into office.

However, according to Plaintiffs, the fact that the seven career Plaintiffs were dismissed automatically means that all career appointments were deficient, and therefore, that all·240 Municipal employees had to be likewise dismissed. The Court disagrees, and finds that this argument directly contradicts Plaintiffs' arguments. The Court can hardly see discriminatory intent when, after 24 years of NPP rule, only seven career Plaintiffs were dismissed out of 240.

The Court finds that Defendants provided ample evidence that justify their actions, actions which were left to the Jury, as the ultimate fact-finder, to evaluate. The Jury chose to credit Defendants' proffered non-discriminatory reason for the employment actions, and on the facts and evidence presented, the Court cannot say that the Jury's choice of credibility of witnesses was clearly erroneous or that no reasonable jury could have found as this Jury did, in favor of Defendants. Therefore, the Court likewise **DENIES** Plaintiffs' motion for a new trial as to the career employees.

## IV. CONCLUSION

For the aforementioned reasons, the Court **DENIES** Plaintiffs' motion for a new trial, and accordingly **AFFIRMS** the Jury verdict in this case entered on January 28, 2004 (docket Nos. 228–239) and **AFFIRMS** this Court's Judgment entered on February 23, 2004 (docket No. 242).

**IT IS SO ORDERED.**

---

4. Since Aguada has been governed by NPP administrations for the past twenty-four years, most of the Municipal employees at the time Mayor Ruiz came into power were affiliated with the NPP.